**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

_____

THE CORYN GROUP II, LLC,         )
         )
    Plaintiff/         )
    Counterclaim-Defendant,    )
    v.        )    Civil Action No. 08-cv-02764-WDQ
         )
O.C. SEACRETS, INC.,         )    Judge William D. Quarles, Jr.
         )
    Defendant/         )
    Counterclaim-Plaintiff.    )
_____    )
         )
O.C. SEACRETS, INC.,         )
         )
    Third-Party Plaintiff,    )
    v.        )
         )
THE CORYN GROUP, INC.,         )
         )
    Third-Party Defendant,    )
    and        )
         )
AMRESORTS, LLC,         )
         )
    Third-Party Defendant.    )
_____    )

**PLAINTIFF/COUNTERCLAIM-DEFENDANT'S OPPOSITION TO**
**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S MOTION FOR**
**SUMMARY AFFIRMANCE OF THE AUGUST 20, 2008 DECISION OF THE**
**TRADEMARK TRIAL AND APPEAL BOARD AND, IN THE ALTERNATIVE,**
**MOTION FOR FURTHER DISCOVERY PURSUANT TO RULE 56(f)**

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ................................................................................................ 2

    A.      Factual Background ............................................................................... 2

    B.      History before the U.S. Patent and Trademark Office ("PTO") ............................ 7

    C.      Current Case and Status of Discovery to Date ............................................. 7

II.     ARGUMENT .................................................................................................. 9

    A.      Standard of Review for Appeal Brought Pursuant to 15 U.S.C. § 1071(b) ......... 11

    B.      Coryn Has Introduced New Evidence Sufficient to Defeat O.C.'s Motion
        for Summary Judgment .......................................................................... 12

    C.      O.C.'s Motion for Summary Affirmance is Premature Because the Parties
        Are in the Midst of Discovery, and Coryn Should Be Afforded Time for
        Additional Discovery Pursuant to Rule 56(f) ............................................. 18

        1.      Evidence Showing a Lack of Actual Confusion ................................... 21

        2.      Strength of the Mark and Evidence of Third-Party Uses of Similar
            Marks for Similar Services ........................................................... 23

        3.      Purchaser Care and Sophistication ................................................. 25

        4.      Similarity of the Services ............................................................ 27

        5.      Channels of Trade ..................................................................... 28

        6.      Similarity of the Marks .............................................................. 29

        7.      Lack of Bad Faith ...................................................................... 30

III.    CONCLUSION ............................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bass Hotels & Resorts, Inc. v. Innco d/b/a Gateway Inn Express*,
2001 TTAB LEXIS 708, at *5-6 (TTAB Sept. 25, 2001) ................................................ 26

*Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Software Int'l, Inc.*,
2008 U.S. Dist. LEXIS 94070 (W.D. Wis. Nov. 17, 2008)...................................... 10, 11

*Captaris, Inc. v. Captara Corp.*,
2007 TTAB LEXIS 167 at *32-33.............................................................................. 17, 26

*CareFirst of Md., Inc. v. First Care, P.C.*,
434 F.3d 263, 268 (4th Cir. 2006) ............................................................................ 14, 22

*Carefree Trading, Inc. v. Life Corp.*,
19 Fed. Appx. 841 (Fed. Cir. 2001) ................................................................ 9, 18, 23, 31

*Ciphertrust, Inc. v. Trusecure Corp.*,
2005 U.S. Dist. LEXIS 46322, at *47-48 (E.D. Va. Nov. 28, 2005).................... 23, 24, 26

*Cortex Corp. v. W.L. Gore & Assoc.*,
1993 U.S. App. LEXIS 16041, at *7-8 (Fed. Cir. June 21, 1993).................................. 22

*Dowling v. City of Philadelphia*,
855 F.2d 136 (3d Cir. 1988)........................................................................................... 19

*E.T.F. Enters.*,
523 F. Supp. at 1153 ................................................................................................ 12, 18

*Elec. Design & Sales v. Elec. Data Systems*,
954 F.2d 713, (Fed. Cir. 1992)....................................................................................... 17

*Four Seasons Hotels, Ltd.*, In re,
987 F.2d 1565 (Fed. Cir. 1993)...................................................................................... 28

*G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*,
676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd* 837 F.2d 985 (7th Cir. 1989) ........................ 15

*Han Beauty, Inc. v. Alberto-Culver Co.*,
236 F.3d 1333 (Fed. Cir. 2001)..................................................................................... 23

*Henri's Food Prods. Co. v. Kraft, Inc.*,
717 F.2d 352 (7th Cir. 1983) ........................................................................................ 15

*IDV N. Am., Inc. v. S & M Brands, Inc.*,
26 F. Supp. 2d 815 (E.D. Va. 1998) ........................................................................ 14, 15

*International Shortstop, Inc. v. Rally's, Inc.*,
    939 F.2d 1257 (5th Cir. 1991) ...................................................................... 19

*Kinetic Concepts, Inc. v. Bluesky Med. Group, Inc.*,
    2005 U.S. Dist. LEXIS 32353 (W.D. Tex. Nov. 1, 2005) ......................... 14, 16

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*,
    118 Fed. Appx. 942 (6th Cir. 2004) .............................................................. 14

*Lone Star*,
    43 F.3d at 937 ................................................................................................ 22

*McClintick v. Leavitt*,
    2007 U.S. Dist. LEXIS 21331, at *22 (D. Md. Mar. 26, 2007) ...................... 18

*Michael Caruso & Co. v. Estefan Enters., Inc.*,
    994 F. Supp. 1454 (S.D. Fla. 1998) .............................................................. 28

*Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*,
    2002 U.S. Dist. LEXIS 13991, at *28 (D. Minn. July 26, 2002) ..................... 16

*Minter v. Wells Fargo Bank, N.A.*,
    593 F. Supp. 2d 788 (D. Md. 2009) ......................................................... 18, 19

*Nat'l Coalition for Students with Disabilities Educ. & Legal Def. Fund v. Scales*,
    150 F. Supp. 2d 845 (D. Md. 2001) .............................................................. 21

*Nationwide Indus., In re*,
    6 U.S.P.Q.2d 1882 (TTAB 1984) ................................................................. 30

*Newport Pac. Corp. v. Moe's Southwest Grill, LLC*,
    2006 WL 2811905, at *16  (D. Or. Sept. 28, 2006) ....................................... 15

*Nike*,
    2007 U.S. Dist. LEXIS 16966, at *17 ...................................................... 11, 14

*Opryland USA Inc. v. The Great American Music Show, Inc.*,
    970 F.2d 847 (Fed. Cir. 1992) ....................................................................... 19

*Paco Sports, Ltd. v. Paco Rabanne Parfums*,
    86 F. Supp. 2d 205 (S.D.N.Y. 2000), *aff'd* 234 F.3d 1262 (2d Cir. 2000) ...... 15

*Palm Bay Imps. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*,
    396 F.3d 1369 (Fed. Cir. 2005) ................................................. 17, 24, 25, 29

*Perini Corp. v. Perini Constr., Inc.*,
    915 F.2d 121 (4th Cir. 1990) ................................................................... 25, 26

*Phillips Petroleum Co. v. C.J. Webb, Inc.*,
    442 F.2d 1376 (C.C.P.A. 1971) ................................................................ 29

*Presto Prods. v. Nick-Pak Prods.*,
    9 U.S.P.Q.2d 1895, 1897 ........................................................................ 29

*Pro-Football, Inc. v. Harjo*,
    2000 U.S. Dist. LEXIS 19792, at *21 (D.D.C. Dec. 11, 2000) ...................................... 19

*Resolution Trust Corp. v. North Bridge Assocs., Inc.*,
    22 F.3d 1198 (1st Cir. 1994) ................................................................... 20

*Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*,
    148 F.3d 417, 422 (4th Cir. 1998) .............................................................. 21

*Sara Lee Corp. v. Kayser-Roth Corp.*,
    81 F.3d 455 (4th Cir. 1996) .................................................................... 14

*Save Venice New York, Inc., In re*,
    259 F.3d 1346, 1355 (Fed. Circ. 2001) .......................................................... 27

*Schmidt v. Quigg*,
    609 F. Supp. 227 (E.D. Mich. 1985) ............................................................. 14

*Scotch Whisky Ass'n v. Majestic Distilling Co.*,
    958 F.2d 594 (4th Cir. 1992) ............................................................... 13, 23

*Seidelmann Yachts, Inc. v. Pace Yacht Corp.*,
    1989 U.S. Dist. LEXIS 17486, at *41 (D. Md. Apr. 26, 1989) ...................................... 21

*Shah v. Collecto, Inc.*,
    2005 U.S. Dist. LEXIS 19938 (D. Md. Sept. 12, 2005) ............................................ 21

*Sirmans v. Caldera*,
    27 F. Supp. 2d 248 (D.D.C. 1998) ............................................................... 20

*Storck USA, L.P. v. Farley Candy Co.*,
    821 F. Supp. 524 (N.D. Ill. 1993) .............................................................. 15

*Thompson v. Haynes*,
    305 F.3d 1369 (Fed. Cir. 2002) ................................................................. 21

*Victoria's Secret Stores Brand Mgmt. v. Sexy Hair Concepts, LLC*,
    2009 U.S. Dist. LEXIS 30458 (S.D.N.Y. Apr. 8, 2009) ...................................... 10, 13, 15

*Vivid Technologies Inc. v. American Science and Eng'g Inc.*,
    200 F.3d 795 (Fed. Cir. 1999); ................................................................ 19

*W.W.W. Pharm. Co., Inc. v. Gillette Co.*,
    984 F.2d 567 (2d Cir. 1993) ............................................................................ 28

*Webster v. Rumsfeld*,
    156 Fed. Appx. 571 (4th Cir. 2005) ................................................................ 19

*Woodfin Suite Hotels, LLC v. The Marcus Corp.*,
    2002 TTAB LEXIS 278, at *14 (TTAB May 10, 2002) .................................. 26

**Statutes**

15 U.S.C. § 1071(b) ........................................................... i, 7, 9, 11, 12, 14, 18, 23

15 U.S.C. § 1125(a) ......................................................................................... 8

Lanham Act, 15 U.S.C. § 1114(1) .................................................................. 8

Rule 56(f) .............................................................................. i, 18, 19, 20, 21

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition § 24:51 (4th ed.) ................................. 15, 29

The Coryn Group II, LLC ("Coryn") owns the SECRETS mark and licenses it to a series of SECRETS all-inclusive, adults-only resorts, featuring elegantly appointed rooms and suites. The SECRETS resorts have won numerous prestigious awards in the travel industry and are recognized as some of the finest resorts in Mexico.  On the other hand, O.C. Seacrets, Inc. ("O.C.") is primarily a bar in Ocean City, Maryland.  O.C. prominently markets its daily wet t-shirt contests, its 17 bars and its "Miss Seacrets" bikini contest and a recent MTV publication awarded it the "Best Chance at Hooking Up" award for the East Coast.  O.C. also has a handful of condominium buildings that it moved close to "the party" and that are available to rent.

O.C. claims that the trademark registration for the SECRETS mark that Coryn uses in connection with its luxury resorts in Mexico and the Caribbean should be cancelled because the mark is likely to cause confusion with O.C.'s party bar and its ancillary rental condos in Ocean City, Maryland.  On July 28, 2009, O.C. filed its Motion for Summary Affirmance ("Motion"), effectively asking this Court to grant summary judgment in its favor and affirm the order of the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB" or "Board") canceling Coryn's registration for SECRETS.

Coryn is entitled to a trial *de novo* on the cancellation issue, and the purpose of the trial *de novo* is to allow the parties to introduce additional evidence relevant to the issues raised in the Board's decision.  Nevertheless, O.C. prematurely requests that the Court summarily affirm the Board's decision before Coryn has had an opportunity to take discovery on the key issues in this case.

Even though Coryn has not yet been afforded the opportunity to conduct important discovery in this case, it is already clear that summary judgment is inappropriate.  Coryn already

presented a new consumer survey that confirms that there is no likelihood of confusion between

Coryn's luxury resort and O.C.'s bar and condos.  In addition, Coryn presented new evidence

regarding the lack of strength of O.C.'s SEACRETS mark and the sophistication of Coryn's

consumers, both which undermine the notion that consumers are likely to be confused and the

Board's conclusion on that issue.

O.C.'s decision to file a premature motion for summary judgment is puzzling because it

will not limit the scope of discovery for the remaining claims in the case.  As mentioned above,

Coryn is currently pursuing extensive discovery on the fundamental issues raised by Coryn in its

appeal, but this discovery is virtually identical to the discovery that is relevant to O.C.'s

counterclaim for trademark infringement and unfair competition, and O.C. does not contend that

it is entitled to summary judgment on its trademark infringement and unfair competition claims.

As a result, regardless of the outcome on O.C.'s motion, Coryn is going to take the discovery

that is relevant to the issues raised in this appeal.  Therefore, there is no reason to deny Coryn the

opportunity to take the discovery it seeks before addressing the merits of O.C.'s Motion.

For all the reasons detailed below, Coryn respectfully requests that the Court deny O.C.'s

Motion.

## I.     BACKGROUND

### A.     Factual Background

Coryn owns the SECRETS mark and licenses it to a series of SECRETS all-inclusive,

adults-only resorts, featuring elegantly appointed rooms and suites.  *See* Declaration of Lisa Jan

LaPointe ("LaPointe Decl.") ¶ 4.  The SECRETS resorts are adults-only hotels, providing

elegantly appointed rooms and suites, which offer romance and sensuality in exquisite luxury

settings, as depicted below.  *Id.* ¶¶ 5, 6; Exhibit 1 (providing images of SECRETS resorts and the quality activities provided at the resorts).





The SECRETS resorts offer an array of luxury entertainment and activities.  *Id.* ¶ 7. Guests can partake of complimentary golf, chef's table dining events, tennis clinics, and state-of-the-art fitness centers; they can rejuvenate and pamper themselves with spa treatments, offering pure indulgence combining hydrotherapy and indigenous treatments creating a refreshing, invigorating and peaceful experience.  *Id.* ¶ 8.  The SECRETS resorts also offer romantic

wedding, honeymoon and anniversary packages, providing catering and decorating and handling every detail of the guest's special event.  *Id.* ¶ 9.



Conversely, O.C. Seacrets, located in Ocean City, Maryland, primarily provides bar, nightclub and restaurant services (17 bars and 3 stages), while offering ancillary accommodations (depicted below), namely former condominiums divided into efficiencies with kitchenettes, close to "the party at Seacrets."  *See* Fee Decl. ¶¶ 50-53; Exhibits 12-15 (providing sample representations of the SEACRETS facilities and the services offered at that establishment).





The "party" is the focus at Seacrets, with 17 bars (*id.* ¶ 51), numerous live entertainment venues (*id.* ¶¶ 51, 54), daily wet t-shirt contests (*id.* ¶ 53; Exhibit 15) and an annual, multiround "Miss Seacrets" bikini contest (depicted below) (*id.* ¶¶ 50, 51, 53; Exhibit 15).



According to one report, the party atmosphere promoted by O.C. resulted in 42 reports of assault in or near Seacrets in 2004, 17 drug-related calls at Seacrets in 2002 and 2003, and a doubling in 2004 from 2001 of the number of reported disorderly conduct calls at Seacrets. *Id.* ¶ 56; Exhibit 18.

Indicative of the clear distinction between the parties' services are the awards each has received.   In 2009 alone, Coryn's SECRETS resorts have been given some of the most prestigious awards in the travel industry, including the following:

- All three Secrets Resorts & Spas earned coveted spots on the 2009 Expedia Insider's Select list.  This highly-prestigious award is based on the top 1% of hotels and resorts worldwide determined by customer satisfaction, value, quality and expert opinions.

- Secrets Maroma Beach Riviera Cancun was recognized with a 2009 TripAdvisor.com Travelers' Choice Award as the #7 resort in Mexico for Romance.  Travelers' Choice winners are determined by a combination of the highest traveler ratings and the TripAdvisor Popularity Index, a measurement of overall traveler satisfaction.

- Secrets Capri Riviera Cancun was recognized in the 2009 Condé Nast Traveler Gold List as one of the finest properties to stay in Mexico by more than 32,000 of Condé Nast Traveler's esteemed readers.  The Gold List Awards rate properties based on several important criteria including food, service, rooms, locations, design and activities.

Coryn Decl. ¶¶ 10, 11; Exhibit 2.   Comparatively, in the travel guide *MTV Road Trips U.S.A.*, O.C. Seacrets was awarded the illustrious distinction of "Best Chance at Hooking Up," stating, "A total of 17 bars on the bayside of Ocean City, MD, offer not only convenient hiding and hanging out spots, but they even offer tube rafts on the water in the bay to shag."  Fee Decl. ¶ 55; Exhibit 17.

Given the obvious differences between the types of services offered, the parties have coexisted for over eight years with little to no evidence of actual confusion.   Moreover, as evidenced by the consumer survey recently conducted for Coryn, there is a mere 1.5% rate of actual confusion – an amount that is wholly insufficient to support a likelihood of confusion.  *Id.* ¶ 18; Exhibit 10.  (The results of the consumer survey are discussed in detail below.)

**B.      History Before the U.S. Patent and Trademark Office ("PTO")**

Coryn's application for SECRETS (Reg. No. 2,772,061) was filed on June 22, 2000.  *Id.* ¶ 57; Exhibit 19.  The PTO did not issue an office action or cite as confusingly similar any prior third-party applications or registrations (including O.C.'s then-existing registration for SEACRETS, Reg. No. 2,102,604).  *Id.* ¶ 58; Exhibit 20.  The SECRETS application was therefore promptly approved for publication, and the mark published for opposition on April 3, 2001.  *Id.*  The application for SECRETS was not opposed and the PTO issued the registration on October 7, 2003.  *Id.*

Despite the concurrent use of the SECRETS and SEACRETS marks, O.C. did not file a trademark infringement case against Coryn's use of the SECRETS mark until December 2008 – more than seven years after the opening of the first SECRETS resort.  *See* Dkt. 18.  Instead, O.C. initially chose to challenge Coryn's registration for, rather than use of, the SECRETS mark. O.C. filed a petition to cancel Coryn's SECRETS registration on January 23, 2004, based on O.C.'s use of and registration for the SEACRETS mark for restaurant and bar services.  *See* TTAB Proceeding 92042854, Notice of Opposition at Dkt. 1.  O.C. also claimed prior use of the SEACRETS mark in connection with motel services.  *See id.*  On August 20, 2008, the TTAB granted O.C.'s petition to cancel Coryn's SECRETS registration.  *Id. at* Dkt. 142.

**C.      Current Case and Status of Discovery to Date**

Both Coryn and O.C. took issue with certain findings of the Board in its August 20, 2008 decision.  As such, pursuant to 15 U.S.C. § 1071(b), Coryn appealed the Board's decision cancelling its registration for SECRETS (Reg. No. 2,772,061).  O.C. filed an untimely cross-appeal, also seeking judicial review of the TTAB's findings that were adverse to O.C.,

specifically, the TTAB's refusal to find that: (a) the SEACRETS mark and name is locally famous, (b) Coryn's counterclaim before the Board to amend O.C.'s registration (under Section 18) was barred by both laches and unclean hands, and (c) Coryn's registration of the SECRETS mark is void. *See* Dkt. 18. O.C. also filed counterclaims against Coryn and a third-party complaint against The Coryn Group, Inc. and AMResorts, LLC for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and for common law trademark infringement and unfair competition under the law of the State of Maryland. *Id.*

The parties are currently in the midst of intensive fact discovery on the fundamental issues involved in this case. Since discovery opened, Coryn has been diligent in seeking discovery from O.C. and in obtaining third-party discovery. Specifically, on February 2, 2009, Coryn served its First Set of Requests for Production of Documents and Things to O.C. Seacrets. Fee Decl. ¶ 3; Exhibit 1. On February 26, 2009, Coryn served its First Set of Interrogatories to O.C. Seacrets. *Id.* ¶ 4; Exhibit 2.

Although Coryn has been diligent in seeking discovery, it was delayed in many matters due to the fact that O.C. did not timely produce electronic documents. *Id.* ¶ 5. Initially, O.C.'s counsel committed to producing O.C.'s electronic production by March 20, 2009. *Id.* ¶ 6; Exhibit 3. However, it wasn't until June 25, 2009 – over three months later – that Coryn received O.C.'s hard drive (consisting of approximately 1.3 terabytes of data, including vast amounts of irrelevant files, such as, for example, a full PDF copy of the book *If I Did It* written by O.J. Simpson). *Id.* ¶¶ 7, 8; Exhibit 4. Since obtaining O.C.'s electronic production, Coryn has continued to diligently seek discovery. Specifically, on July 7, 2009, Coryn noticed the 30(b)(6) deposition of O.C. and of O.C.'s owner, Leighton Moore. *Id.* ¶ 9, 10; Exhibits 5, 6. On

August 6, 2009, Coryn noticed the inspection of O.C.'s property. Fee Decl. ¶ 12; Exhibit 7. On

August 7 and 11, 2009, Coryn served its First and Second Set of Requests for Admissions to

O.C. Seacrets. *Id.* ¶¶ 13-16; Exhibits 8, 9. Discovery is not currently scheduled to close until

September 15, 2009. *Id.* ¶ 17.

Approximately one month after O.C. dumped an enormous amount of data on Coryn

(much of which was not responsive to Coryn's document requests and completely irrelevant) and

before Coryn had been able to take a significant amount of discovery, O.C. filed its motion for

summary judgment.

## II.    ARGUMENT[1]

As mentioned above, Coryn filed this appeal of the TTAB decision pursuant to 15 U.S.C.

§ 1071(b). 15 U.S.C. § 1071(b) provides for a trial *de novo* from the TTAB in order "to allow

the parties to introduce additional evidence relevant to the issues raised before the Board."

*Carefree Trading, Inc. v. Life Corp.*, 19 Fed. Appx. 841, 847 (Fed. Cir. 2001) (internal

quotations omitted). Nevertheless, O.C. requests – before the close of discovery – that this Court

summarily affirm the TTAB's decision cancelling Coryn's registration for SECRETS on the

basis that Coryn has "introduced no new evidence in this proceeding that would alter the

TTAB's findings of fact and conclusions of law."[2] Mot. at 2.

---

[1]    Coryn anticipates supplementing this opposition as discovery proceeds and additional facts and information supporting its arguments become available.

[2]    For the purpose of this opposition, Coryn does not specifically address O.C.'s Motion as it applies to the issues of priority, Coryn's Section 18 counterclaim, or the parties' laches claims, because there are issues of material fact regarding the likelihood of confusion that are sufficient grounds for denying O.C.'s Motion. However, for the same reasons outlined in this Opposition, summary affirmance is not proper at this time, and the absence of a detailed discussion on these issues should not be deemed as an admission.

Although O.C. argues that this is not a Motion for Summary Judgment, *id.*, O.C. does not provide any federal rule or ground for its "Motion for Summary Affirmance," and Coryn is unaware of any authority for a motion for summary affirmance that is distinct from a motion for summary judgment.  On the other hand, courts have addressed summary judgment motions in connection with appeals from the TTAB.  As such, Coryn can only presume that what O.C. is in fact requesting is a motion for summary judgment affirming the TTAB's decision and therefore construes it as such.  *See, e.g., Victoria's Secret Stores Brand Mgmt. v. Sexy Hair Concepts, LLC*, 2009 U.S. Dist. LEXIS 30458 (S.D.N.Y. Apr. 8, 2009) (denying defendant's motion for summary judgment requesting affirmance of the TTAB's decision); *see also Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Software Int'l, Inc.*, 2008 U.S. Dist. LEXIS 94070 (W.D. Wis. Nov. 17, 2008) (granting plaintiff's motion for summary judgment and reversing TTAB's cancellation, stating that the court may "reverse or affirm the board's cancellation only if the evidence related to the question of likelihood of confusion is so one-sided that there can be no doubt about how the question should be answered") (internal quotations omitted).

O.C. filed its Motion on July 28, 2009 – more than six weeks before the current close of discovery and, conveniently, four days before expert disclosures were due.  Since that time, as discussed in more detail below, Coryn has introduced new evidence, including the Expert Witness Report of Kenneth A. Hollander, who, after conducting a consumer survey, found that a mere 1.5% of people believed that the services offered by Coryn under the SECRETS mark were offered by O.C. or that the companies were otherwise associated, affiliated or connected based on the alleged similarity between the SECRETS and SEACRETS marks.  This new evidence, alone and especially when combined with additional new evidence submitted by Coryn, is

sufficient to overcome O.C.'s current Motion.   Alternatively, as detailed below and in the attached Fee Declaration, Coryn should be given additional time to complete discovery in order to fully and adequately respond to each of the issues raised in O.C.'s Motion.

### A.    Standard of Review for Appeal Brought Pursuant to 15 U.S.C. § 1071(b)

Coryn sought review of the TTAB's decision pursuant to section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).  "In cases brought pursuant to 15 U.S.C. § 1071(b), the district court sits in a dual capacity, serving on one hand as the finder of fact with respect to new evidence presented by the parties, and on the other as an appellate reviewer of facts found by the TTAB." *Glendale Int'l Corp. v. U.S. Patent and Trademark Office*, 374 F. Supp. 2d 479, 485 (E.D. Va. 2005) (internal quotations omitted).

The Board's finding on the matter of likelihood of confusion will be given deference.  *Id.* (finding that decisions of the Board are reviewed for "substantial evidence" with respect to findings of fact).  "However, to the extent the parties have submitted new facts relevant to the likelihood of confusion analysis, those facts will be considered *de novo* and the Board's determination will be considered in the context of the newly-considered evidence." *Bd. of Regents of the Univ. of Wis.*, 2008 U.S. Dist. LEXIS 94070, at *23; *see also Recot, Inc. v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000) (finding that the district court acts as a "fact-finder with respect to any new evidence that the parties may choose to introduce").

Ultimately, "[w]hen review of a [TTAB] decision takes place in a federal district court, the proceeding takes the form of a trial de novo, in which the fact findings [of] the Board are entitled to deference, but the parties are free to submit additional evidence." *Nike, Inc. v.*

*Nikepal Int'l, Inc.*, 2007 U.S. Dist. LEXIS 16966 (E.D. Cal. Feb. 27, 2007) (*citing* Louis Altman, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES 26:57 (4th ed. 2006)); *see also Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 391 (7th Cir. 1992) ("Review of a TTAB decision in a federal district court is considered de novo because the parties are permitted to present new evidence and even enlarge the pleadings.").

As indicated above, O.C.'s Motion can only be interpreted as a motion for summary judgment affirming the TTAB's decision. As such, the Court should grant O.C.'s Motion only if, after "viewing all facts and inferences in a light most favorable" to Coryn, there is "no genuine issue as to any material fact and . . . [O.C.] is entitled to a judgment as a matter of law." *Sterling Acceptance Corp. v. Tommark, Inc.*, 91 Fed. Appx. 880, 881 (4th Cir. 2004).

**B.      Coryn Has Introduced New Evidence Sufficient to Defeat O.C.'s Motion for Summary Judgment.**

The purpose of challenging a TTAB decision pursuant to 15 U.S.C. § 1071(b) is to permit a party to submit new evidence. *Glendale Int'l*, 374 F. Supp. 2d at 485. Moreover, the new evidence submitted is not limited in time, but instead can postdate the TTAB's decision. *See E.T.F. Enters., Inc. v. Nina Ricci, S.A.R.L.*, 523 F. Supp. 1147, 1153 (S.D.N.Y. 1981) ("[T]he (district) court cannot freeze the record on the proceedings before the Board.").

In determining whether the SECRETS registration should be cancelled, the Court must determine whether there is a likelihood of confusion between Coryn's use of SECRETS in connection with its resorts and O.C.'s use of SEACRETS in connection with its bar, restaurant and motel. In making this determination, the Court considers the following, nonexclusive factors: (1) the similarity of the marks to consumers; (2) the similarity of the goods or services; (3) the strength or distinctiveness of the plaintiff's mark; (4) the similarity of the channels of

trade; (5) actual confusion; (6) the defendant's intent; and (7) the sophistication of the consuming public. *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973); *see also George & Co., LLC v. Imagination Entm't Ltd.*, 2009 U.S. App. LEXIS 16415, at *27 (4th Cir. July 27, 2009).

The Fourth Circuit recently found that the actual confusion factor is the most important factor in a likelihood of confusion analysis and that confusion – or lack thereof – can be demonstrated by survey evidence. *George & Co.*, 2009 U.S. App. LEXIS 16415, at *27; *see also Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 Fed. Appx. 630, 638 (5th Cir. 2008) (stating that "evidence of actual confusion is . . . the best evidence of a likelihood of confusion" and finding that a party may rely on consumer surveys to show such confusion); *Scotch Whisky Ass'n v. Consol. Distilled Prods.*, 1980 U.S. Dist. LEXIS 16633, at *9 (N.D. Ill Sept. 15, 1980) ("[S]urvey evidence is often highly probative in trademark cases."); *see also Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1564 (Fed. Cir. 1994) (finding that consumer surveys are a method of determining actual confusion).

In the current case, in accordance with the current Scheduling Order, Coryn produced on August 3, 2009 the Expert Witness Report of Kenneth A. Hollander.  Mr. Hollander conducted a consumer survey (the "Hollander Survey") and found that a mere 1.5% of people believed that the services offered by Coryn under the SECRETS mark were offered by O.C. or that the companies were otherwise associated, affiliated or connected based on the alleged similarity between Coryn's SECRETS mark and O.C.'s SEACRETS mark.  Fee Decl. ¶ 18; Exhibit 10.

Coryn's submission of the Hollander Survey, showing *de minimis* confusion, is in itself sufficient to overcome O.C.'s current Motion.  *See Victoria's Secret Stores*, 2009 U.S. Dist.

LEXIS 30458, at *16-17 (denying summary judgment motion on a section 1071(b) appeal, based in part on new survey evidence demonstrating a lack of likelihood of confusion); *Nike,* 2007 U.S. Dist. LEXIS 16966, at *17 (denying summary judgment on section 1071(b) appeal, stating that "Plaintiff has introduced as new evidence, inter alia, the Johnson survey, from which divergent ultimate inferences may reasonably be drawn that bear on the TTAB's decision on the dilution issue") (internal quotations omitted); *see also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 Fed. Appx. 942, 949 (6th Cir. 2004) (reversing grant of summary judgment and remanding for the district court to determine whether consumer survey created an issue of fact with respect to likelihood of confusion); *Kinetic Concepts, Inc. v. Bluesky Med. Group, Inc.*, 2005 U.S. Dist. LEXIS 32353 (W.D. Tex. Nov. 1, 2005) (finding plaintiff's survey constituted a genuine issue of material fact sufficient to overcome summary judgment); *Schmidt v. Quigg*, 609 F. Supp. 227, 231 (E.D. Mich. 1985) (reversing TTAB refusal of registration on section 1071(b) appeal due to survey evidence showing secondary meaning).

The Hollander Survey is especially probative given the extremely low percentage (1.5%) of confusion evidenced.  *See IDV N. Am., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 829 (E.D. Va. 1998) ("Survey results indicating a low percentage of 'confused' participants is evidence of the absence of likelihood of confusion.").  Courts have consistently held that a survey showing less than a 10% rate of confusion weighs against a finding of a likelihood of confusion.  *See CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006) (finding no likelihood of confusion where survey showed only 2% level of confusion, stating the result was *de minimis* and "hardly a sufficient showing of actual confusion"); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 469 n.15 (4th Cir. 1996) ("We may infer from the case law that

survey evidence clearly favors the defendant when it demonstrates a level of confusion much below ten percent."); *IDV N. Am.*, 26 F. Supp. 2d at 831 (finding survey result of 2.4% proves "the absence, rather than the presence, of likely confusion of source or sponsorship"); *see also Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 357 (7th Cir. 1983) (holding that survey showing a 7.6% rate of confusion weighs against a finding of likelihood of confusion); *Newport Pac. Corp. v. Moe's Southwest Grill, LLC*, 2006 WL 2811905, at *16 (D. Or. Sept. 28, 2006) (granting summary judgment in favor of alleged infringer and finding that 14% confusion result was "barely above McCarthy's threshold that confusion results below 10% are evidence that confusion is *not* likely") (emphasis in original); *Paco Sports, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305 (S.D.N.Y. 2000), *aff'd* 234 F.3d 1262 (2d Cir. 2000) (finding no likelihood of confusion and holding survey showing 5% confusion was "virtually indistinguishable" from the control group); *Storck USA, L.P. v. Farley Candy Co., Inc.*, 821 F. Supp. 524, 527 (N.D. Ill. 1993) (finding survey's 7.6% confusion percentage weighs against a finding of likelihood of confusion); *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 676 F. Supp. 1436 (E.D. Wis. 1987), *aff'd*, 873 F.2d 985 (7th Cir. 1989) (holding survey result of 4.5% confusion "falls well within the range which other courts have determined weighs against a finding of infringement").

The Hollander Survey is significant new evidence of a lack of actual confusion and is strongly probative on the absence of a likelihood of confusion in this case. *See Victoria's Secret Stores*, 2009 U.S. Dist. LEXIS 30458, at *36 (denying summary judgment requesting affirmance of TTAB's decision to refuse registration, finding that survey showing 2.29% confusion rate demonstrated that plaintiff's mark was "not likely to cause confusion" with defendant's). Moreover, Coryn has presented new evidence indicating that it is not aware of any instances of

confusion with O.C. or O.C.'s SEACRETS mark in the over eight years that Coryn has used the SECRETS mark.  LaPointe Decl. ¶ 13.  As a result of all of this new evidence, the actual confusion factor clearly suggests no likelihood of confusion, and this factor is the single most important factor in the likelihood of confusion analysis.  *See George & Co.*, 2009 U.S. App. LEXIS 16415, at *27.  At a minimum, the Hollander Survey and the new evidence of no actual confusion certainly raises a genuine issue of material fact on likelihood of confusion sufficient to overcome summary judgment.  *Kinetic Concepts*, 2005 U.S. Dist. LEXIS 32353, at *38; *see also Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*, 2002 U.S. Dist. LEXIS 13991, at *28 (D. Minn. July 26, 2002) (finding that "the survey results are sufficient to raise a genuine issue of material fact for the purposes of summary judgment").

In addition to the Hollander Survey, Coryn has produced documents relating to the apparent third-party uses of the SECRET / SECRETS marks in connection with hotel, bar, and restaurant services, including the following:  Secrets Inn in Lake Tahoe, California; Secret Harbour Beach Resort in St. Thomas, the U.S. Virgin Islands; Secrets bar and restaurant in Fremont, Wisconsin; Secret Garden Bed and Breakfast in Spearfish, South Dakota; The Secret Bed & Breakfast Lodge in Leesburg, Alabama; The Secret Garden inn in Eugene, Oregon; Secret Garden Inn & Cottages in Santa Barbara, California; Secrets Bed & Breakfast in Brenham, Texas; and The Secret Garden Inn in Boulder Junction, Wisconsin.  Fee Decl. ¶¶ 23-25; Exhibit 11.  As detailed below, Coryn is currently in the process of arranging to subpoena and depose these third parties to determine the nature and scope of their respective uses of SECRET/SECRETS.  *Id.* ¶ 27, 28.  This new evidence contradicts the Board's finding regarding the alleged strength of the SEACRETS mark and undermines O.C.'s argument that there is a

likelihood of confusion.  *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371 (Fed. Cir. 2005) (finding that the existence of these third-party uses weakens the strength of a mark and reduces the protection afforded to that mark).

Additionally, Coryn has produced new evidence related to the relative expense of services offered under Coryn's SECRETS mark, which goes directly to the issue of purchaser care and sophistication.  LaPointe Decl. ¶ 12; Exhibit 3.  *See Captaris, Inc. v. Captara Corp.*, 2007 TTAB LEXIS 167, at *32-33 (TTAB July 19, 2007) (*quoting Elec. Design & Sales, Inc. v. Elec. Data Systems, Corp.*, 954 F.2d 713, (Fed. Cir. 1992) ("[T]here is always less likelihood of confusion where goods are expensive and purchased after careful consideration.") (internal quotations omitted).  This evidence, particularly when combined with O.C.'s prior admission that international travelers are likely to exercise care in making travel decisions, TTAB Dkt. 120, Petitioner's Reply Brief at 7, suggests that consumer confusion is unlikely.

Finally, O.C. admitted in its brief before the TTAB that "there is no evidence suggesting a bad faith intent to appropriate Petitioner's SEACRETS mark and to capitalize on its renown within the mid-Atlantic states."  TTAB Dkt. 112, Petitioner's Trial Brief at 31-32.  That admission, combined with the new evidence introduced by Coryn, as detailed above, clearly raises material issues of fact.

Although still in the midst of conducting fact discovery that will produce additional new evidence, Coryn has to date introduced sufficient new evidence to rebut the Board's August 20, 2008 decision cancelling Coryn's SECRETS registrations and, at a minimum, to overcome O.C.'s requested "summary affirmance" of that decision.  Accordingly, O.C.'s Motion should be denied.

**C.    O.C.'s Motion is Premature Because the Parties Are in the Midst of Discovery, and Coryn Should Be Afforded Time for Additional Discovery Pursuant to Rule 56(f).**

The Hollander Survey, combined with the other new evidenced introduced by Coryn, is sufficient to overcome O.C.'s current motion for summary judgment.  However, as detailed below and in the attached Fee Declaration, to the extent the Court deems it necessary for Coryn to respond to O.C.'s claims raised in the Motion regarding evidence for each of the likelihood of confusion factors, Coryn needs additional time to complete discovery in order to fully and adequately respond.  *See Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 792 (D. Md. 2009) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to [sic] undertaken; or (3) issue any other just order."); *McClintick v. Leavitt*, 2007 U.S. Dist. LEXIS 21331, at *22 (D. Md. Mar. 26, 2007) ("[T]he court may refuse the application for judgment or may order a continuance to permit . . . discovery to be had . . . .").

The very purpose of a trial *de novo* under 15 U.S.C. § 1071(b) "is to allow the parties to introduce additional evidence relevant to the issues raised before the Board."  *Carefree Trading*, 19 Fed. Appx. at 847 (internal quotations omitted).  Moreover, "the (district) court cannot freeze the record on the proceedings before the Board."  *E.T.F. Enters.*, 523 F. Supp. at 1153.

In *Carefree Trading*, the Federal Circuit denied the district court's grant of summary judgment in section the 1071(b) case, finding that the appellant should be allowed "the full opportunity to develop its case" by "obtaining the kind of evidence that the appeal is designed to permit."  19 Fed. Appx. at 847 (vacating grant of summary judgment and remanding to the

district court to permit Carefree the opportunity for further discovery); *see also Webster v. Rumsfeld*, 156 Fed. Appx. 571, 576 (4th Cir. 2005) ("As a general rule . . . summary judgment is not appropriate prior to the completion of discovery."); *Pro-Football, Inc. v. Harjo*, 2000 U.S. Dist. LEXIS 19792, at \*21 (D.D.C. Dec. 11, 2000) (denying summary judgment because "the parties have not had an opportunity to present the Court with any detailed information about the interests that underlie their respective positions"); *Minter*, 593 F. Supp. 2d at 792 ("As a general rule, summary judgment is not appropriate prior to the completion of discovery.").

This case thus presents a classic example of when a continuance pursuant to Rule 56(f) is appropriate.   Before ruling on a summary judgment motion – or, motion for "summary affirmance" – "[t]he court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery."  *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988); *Vivid Tech., Inc. v. American Science and Eng'g Inc.*, 200 F.3d 795 (Fed. Cir. 1999); *see also Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 852-53 (Fed. Cir. 1992) (vacating summary judgment as being "improvidently granted" because the TTAB erred in denying nonmovant right to obtain evidence under Rule 56(f) ); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1268 (5th Cir. 1991) (holding district court abused its discretion in denying a continuance for discovery under Rule 56(f) and stating that because "[s]ummary judgment is a lethal weapon," courts must "afford prospective victims some protective armor if we expect them to properly defend against it").

Rule 56(f) affords a party the opportunity to seek deferral of a motion for summary judgment so that it can obtain affidavits and other discovery essential to its opposition:

> Should it appear from the affidavits of a party opposing the motion
> that the party cannot for reasons stated present by affidavit facts

> essential to justify the party's opposition, the court may refuse the
> application for judgment or may order a continuance to permit
> affidavits to be obtained or depositions to be taken or discovery to
> be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).   To that end, Rule 56(f) is granted liberally and courts have broad

discretion in doing so.   *See, e.g.*, *Resolution Trust Corp. v. North Bridge Assocs., Inc.*, 22 F.3d

1198, 1203 (1st Cir. 1994) ("Consistent with the salutary purposes underlying Rule 56(f), district

courts should construe motions that invoke the rule generously."); *Sirmans v. Caldera*, 27 F.

Supp. 2d 248, 250 (D.D.C. 1998) (noting that Rule 56(f) is applied liberally).

In the current case, Coryn has presented new evidence that is sufficient in itself to avoid

summary judgment affirming the Board's finding of a likelihood of confusion.   If necessary,

however, Coryn should be permitted the opportunity to submit additional evidence rebutting the

findings of the Board.   The parties are in the middle of discovery, and Coryn has numerous

discovery requests (including noticed depositions, a noticed inspection, and admissions requests)

outstanding.    Additionally, given that issues on which discovery is currently pending are

inextricably intertwined with O.C.'s counterclaim for trademark infringement and unfair

competition, O.C.'s Motion, even if granted, would not halt the discovery currently being

conducted or dispose of the case at hand due to the presence of the interconnected infringement

claims.   Therefore, there is no efficiency to granting the Motion prior to the close of fact

discovery and significant prejudice to Coryn in the event the Court were to grant summary

judgment against Coryn before it has had the benefit of full discovery.

Coryn has identified additional specific evidence and types of evidence, detailed below

and in the Fee Declaration, that are highly probative on the issue of likelihood of confusion and

should be afforded the opportunity to continue the discovery process, which is not currently

scheduled to close until September 15, 2009.  Fee Decl. ¶ 17.  Coryn therefore requests that this

Court deny the Motion, or, in the alternative, order a continuance to enable affidavits to be

obtained, depositions to be taken, and other discovery to undertaken.  *See Nat'l Coalition for*

*Students with Disabilities Educ. & Legal Def. Fund v. Scales*, 150 F. Supp. 2d 845, 848 (D. Md.

2001) ("Ordinarily, a district court should refuse to grant summary judgment when an opposing

party needs additional time to complete discovery and properly respond to the motion.") (internal

quotations omitted); *see also Shah v. Collecto, Inc.*, 2005 U.S. Dist. LEXIS 19938 (D. Md. Sept.

12, 2005) (in deciding a Rule 56(f) motion, "the court may refuse the application for judgment or

may order a continuance to permit affidavits to be obtained or depositions to be taken or

discovery to be had or may make such other order as is just").

Specifically, Coryn seeks discovery on the following issues:

### 1.    Evidence Showing a Lack of Actual Confusion

"Proof that actual confusion has occurred is the most cogent evidence that confusion is

likely."  *Seidelmann Yachts, Inc. v. Pace Yacht Corp.*, 1989 U.S. Dist. LEXIS 17486, at *41 (D.

Md. Apr. 26, 1989); *see also Thompson v. Haynes*, 305 F.3d 1369, 1377 (Fed. Cir. 2002) ("The

best evidence of a likelihood of confusion in the marketplace is actual confusion."); *Resorts of*

*Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998) (noting that

"[e]vidence of actual confusion is of paramount importance in this analysis").  Conversely,

evidence of a lack of actual confusion "weigh[s] heavily against a finding of a likelihood of

confusion."  *George & Co.*, 2009 U.S. App. LEXIS 16415, at *27 (finding that actual confusion

is the most important factor in a likelihood of confusion analysis and that "[e]vidence of only a

small number of instances of actual confusion may be dismissed as *de minimis*"); *see also Lone*

*Star Steakhouse & Saloon v. Alpha of Va., Inc.*, 43 F.3d 922, 937 (4th Cir. 1995) ("Although no one factor is decisive, the absence of actual confusion in the marketplace provides the most compelling evidence of [no] likelihood of confusion.") (internal quotations omitted); *Cortex Corp. v. W.L. Gore & Assoc.*, 1993 U.S. App. LEXIS 16041, at *7-8 (Fed. Cir. June 21, 1993) (finding that the absence of actual confusion underscored the dissimilarity of the marks and products and strongly reinforced the conclusion that there was no likelihood of confusion).

As detailed above, Coryn has produced the Hollander Survey, which evidences *de minimis* confusion (a mere 1.5%). Fee Decl. ¶ 18; Exhibit 10. However, O.C. asserts that there have been instances of actual confusion and claims that testimony of Leighton Moore, the owner of O.C., indicates that "some of his customers were likely confused as to whether or not he expanded his Seacrets operation into Mexico." Mot. at 17. Moreover, in its decision to cancel Coryn's registration for SECRETS, the TTAB found that instances of actual confusion are only likely to increase in the future. Board Order dated August 20, 2008, at 22.

It is therefore imperative that Coryn be given the opportunity to take the duly noticed depositions of O.C.'s owner Leighton Moore and the 30(b)(6) deposition of O.C. to confirm that there have been no instances of actual confusion since the parties' 2006 depositions in the TTAB proceeding, and only *de minimis* claimed instances of confusion in the over eight years that the parties' marks have coexisted. Fee Decl. ¶¶ 19-22; *see CareFirst of Md.*, 434 F.3d at 269 ("[T]he absence of any evidence of actual confusion over a substantial period of time - here, approximately nine years - creates a strong inference that there is no likelihood of confusion."); *see also George & Co.,* 2009 U.S. App. LEXIS 16415, at *27-28, 31 (finding that "[e]vidence of the number of instances of actual confusion must be placed against the background of the

number of opportunities for confusion" and finding that "[a]t worst, the company's failure to uncover more than a few instances of actual confusion creates a presumption against likelihood of confusion in the future"); *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1338 (Fed. Cir. 2001) ("extended periods of side-by-side sales without actual confusion may tend to refute a likelihood of confusion"); *Scotch Whisky Ass'n v. Majestic Distilling Co*., 958 F.2d 594, 598 (4th Cir. 1992) ("[A]fter the lapse of substantial time if no one appears to have been actually deceived[,] that fact is strongly probative of the defense that there is no likelihood of confusion."); *Ciphertrust, Inc. v. Trusecure Corp.*, 2005 U.S. Dist. LEXIS 46322, at *47-48 (E.D. Va. Nov. 28, 2005) ("The inability to identify an appreciable level of actual confusion after a substantial period of co-existence creates a presumption against likelihood of confusion in the future.")

      **2.**      **Strength of the Mark and Evidence of Third-Party Uses of Similar Marks for Similar Services**

"Third party uses of a mark diminish the mark's strength and restrict the amount of protection afforded to the mark's owner." *Carefree Trading*, 19 Fed. Appx. at 844. In *Carefree*, the Federal Circuit overturned the district court's grant of summary judgment on a section 1071(b) appeal because the appellant had not been afforded sufficient time for discovery, including the opportunity to "fully explore third party uses of names and marks which include the [relevant mark] in the relevant field and among the relevant classes of consumers." *Id.*

At the TTAB proceeding, Coryn presented evidence of third-party uses of SEA-formative marks, which the Board did not find persuasive on the theory that "sea" marks, including "Sea Crest" marks, convey a distinctively different commercial impression. Board Order dated August 20, 2008, at 16-17.

O.C. argues that Coryn has introduced no new evidence of third-party uses, Mot. at 12, but Coryn has produced documents disclosing the existence of apparent third-party uses of SECRET / SECRETS marks in connection with hotel, bar, and restaurant services, including the following:  Secrets Inn in Lake Tahoe, California; Secret Harbour Beach Resort in St. Thomas, the U.S. Virgin Islands; Secrets bar and restaurant in Fremont, Wisconsin; Secret Garden Bed and Breakfast in Spearfish, South Dakota; The Secret Bed & Breakfast Lodge in Leesburg, Alabama; The Secret Garden Inn in Eugene, Oregon; Secret Garden Inn & Cottages in Santa Barbara, California; Secrets Bed & Breakfast in Brenham, Texas; and The Secret Garden Inn in Boulder Junction, Wisconsin.  Fee Decl. ¶¶ 24, 25; Exhibit 11.  These third-party uses bear strongly on the issue of the relative strength of the SEACRETS mark, since the existence of third-party uses of similar marks weakens the strength of a mark and reduces the protection afforded to that mark.  *See Palm Bay Imps.*, 396 F.3d at 1373 ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection."); *Ciphertrust*, 2005 U.S. Dist. LEXIS 46322, at *35 ("The greater the number of users of marks containing the [relevant marks,] the weaker the overall strength of each mark and the less likely it is that the public will be confused by the use of the same or similar mark on other goods and services.").

In order to provide evidence of the nature, scope and duration of these third-party uses, it is imperative that Coryn be permitted to conduct third-party depositions of the persons and/or businesses using the marks.  Fee Decl. ¶ 27.  As the parties are still in the midst of discovery, Coryn is in the process of arranging for these third-party depositions.  *Id.* ¶ 28.  In fact, during recent scheduling discussions, counsel for Coryn advised counsel for O.C. of its intent to take

these third-party depositions, and the parties agreed in principal to conduct these depositions by telephone. *Id.* ¶ 29.

Additionally, the duly noticed deposition testimony of O.C.'s owner Leighton Moore and the 30(b)(6) deposition of O.C. to identify additional third-party uses of SECRETS and/or SEACRETS, *id.* ¶ 26, and to provide evidence relating to O.C.'s advertising expenditures, most particularly expenditures since the previous depositions in the Board proceeding, and information regarding a lack of consumer awareness surveys for the SEACRETS mark. Both of these issues are highly probative on the strength of the SEACRETS mark. *Id.* ¶¶ 30-32. *See Palm Bay Imps.*, 396 F.3d at 1373; *Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1265 (Fed. Cir. 1995) (finding that widespread advertising may bolster the strength of a trademark).

Accordingly, Coryn should be permitted to continue the discovery it has diligently been pursuing in order to submit its evidence, including evidence on third-party uses of SECRET / SECRETS, which is probative on the strength (or, in this case, weakness) of the SEACRETS mark. *See Palm Bay Imps.*, 396 F.3d at 1373; *see also Kinark Corp. v. Camelot, Inc.*, 548 F. Supp. 429, 440 (D.N.J. 1982) ("Given the vast number of hotels, motels and restaurants throughout the United States, it is not uncommon to find that hotels, motels and restaurants of diverse ownership, but using the same name, exist in numerous cities throughout the United States.").

### 3. Purchaser Care and Sophistication

"[T]he sophistication and expertise of the usual purchasers can preclude any likelihood of confusion" among similar marks. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990). Specifically, "[w]here the relevant products are expensive, or the buyer class consists

of sophisticated or professional purchasers, courts have generally not found Lanham Act violations." *Ciphertrust*, 2005 U.S. Dist. LEXIS 46322, at *43; *see also Captaris*, 2007 TTAB LEXIS 167, at *32-33 ("[T]here is always less likelihood of confusion where goods are expensive and purchased after careful consideration.") (internal quotations omitted).

The TTAB found that Coryn did not evidence "any particular sophistication of its customers in booking 'resort hotel' vacations." Board Order dated August 20, 2008, at 21. Evidence has since been produced detailing the relative expense of the services offered under the SECRETS mark. *See* LaPointe Decl. ¶ 12; Exhibit 3. However, in order to fully rebut this claim, Coryn seeks admissions responses from O.C. regarding the degree of care and deliberation likely to be exercised by consumers in booking travel to Mexico and the Caribbean. Fee Decl. ¶ 33. Similarly, Coryn intends to question Leighton Moore and O.C.'s 30(b)(6) witnesses, pursuant to the duly noticed depositions, regarding this level of care and deliberation. *Id.* ¶ 34.

The sophistication and level of purchaser care is probative on the issue of likelihood of confusion, *Perini Corp.*, 915 F.2d at 127, and it has been found that, even in the case of standard hotels, as opposed to the all-inclusive, luxury resorts offered by Coryn under the SECRETS marks, there is a level of care exercised when choosing hotels. *See, e.g., Woodfin Suite Hotels, LLC v. The Marcus Corp.*, 2002 TTAB LEXIS 278, at *14 (TTAB May 10, 2002) (finding "hotel services are somewhat expensive and are purchased with some degree of care" in the context of hotels frequented by business travelers and leisure weekend travelers); *Bass Hotels & Resorts, Inc. v. Innco d/b/a Gateway Inn Express*, 2001 TTAB LEXIS 708, at *5-6 (TTAB Sept. 25, 2001) (finding no likelihood of confusion, in part because "the purchase of nightly accommodations is not an inexpensive or casual purchase (such as a bar of soap or bottle of

shampoo, for example), and . . . purchasers of hotel and motel services are likely to exercise some degree of care in the purchasing decision")

### 4.    Similarity of the Services

"The related goods test measures whether a reasonably prudent consumer would believe that noncompetitive but related goods sold under similar marks derive from the same source, or are affiliated with, connected with, or sponsored by the same trademark owner." *In re Save Venice New York, Inc.*, 259 F.3d 1346, 1355 (Fed. Cir. 2001).

As summarized above, Coryn offers SECRETS-branded luxury, all-inclusive resorts in Mexico and the Caribbean.  The SECRETS resorts are adults-only hotels, providing elegantly appointed rooms and suites, which offer romance and sensuality in exquisite luxury settings.  In contrast, O.C.' s SEACRETS establishment, located in Ocean City, Maryland, primarily provides bar, nightclub and restaurant services, while offering minimal ancillary accommodations, including efficiencies with kitchenettes.  *See* LaPointe Decl. ¶ 6; Exhibit 1; Fee Decl. ¶ 53; Exhibit 15, depicting the clear distinctions between the parties' services.

Coryn has numerous outstanding discovery requests probative on the issue of the relatedness of the services offered by the parties, including (1) Requests for Admissions, which are probative on the specific services currently offered under the SEACRETS mark and the lack of O.C.'s geographic expansion, Fee Decl. ¶ 27; (2) the duly noticed deposition testimony of O.C.'s owner Leighton Moore and the 30(b)(6) deposition of O.C., which will be used to detail the differences in the services offered by the parties under their respective marks and the lack of O.C.'s geographic expansion, *id*. ¶ 36; and (3) Coryn's noticed inspection of the land and

buildings in the possession or control of O.C., which will evidence the differences in the services offered by the parties under their respective marks and the lack of O.C.'s expansion, *id.* ¶ 38.

This additional discovery will also provide evidence that the vast majority of O.C.'s business does not involve the offering of hotel services, which are the core services offered by Coryn. *See Michael Caruso & Co., Inc. v. Estefan Enters., Inc.*, 994 F. Supp. 1454, 1461 (S.D. Fla. 1998) (finding no likelihood of confusion for "ancillary" goods, stating that the "mere fact that Defendants sell some clothing items and Plaintiff specializes in retail apparel does not establish proximity of the goods for purposes of likelihood of confusion").

Moreover, the nature of the hotel and related services offered by O.C. (the very information sought in the outstanding discovery) is crucial to determining whether the parties' services are sufficiently related to weigh on the side of likelihood of confusion. *See In re Four Seasons Hotels, Ltd.*, 987 F.2d 1565, 1567 (Fed. Cir. 1993) ("Admittedly, the services performed by applicant and registrant are similar, but they are not – as the TTAB would have it – the same. One is a resort offering outdoor activities and enjoyment at an oceanfront locale, while the other, a traditional hotel is located in the heart of a city."); *see also W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (finding that the mere fact that products are both personal care products "does not make them proximate" and stating that the court "may consider whether the products differ in content, geographic distribution, market position, and audience appeal").

### 5.    Channels of Trade

"[I]f the goods of one party are sold to one class of buyers in a different marketing context than the goods of another seller, the likelihood that a single group of buyers will be confused by similar trademarks is less than if both parties sold their goods through the same

channel of distribution."  4 McCarthy on Trademarks and Unfair Competition § 24:51 (4th

ed.).  In the current case, Coryn has numerous outstanding discovery requests probative on the

issue of the parties' relative channels of trade, including Requests for Admissions, which are

probative on the issue of channels in which O.C. advertises, Fee Decl. ¶ 40, and the duly-noticed

deposition testimony of O.C.'s owner Leighton Moore and the 30(b)(6) deposition of O.C.,

which will provide evidence that the parties operate in distinct trade channels and advertise in

distinct media.  *Id.* ¶ 41.

### 6.    Similarity of the Marks

The degree to which marks are similar depends on the appearance, sound, connotation

and commercial impression of the marks in their entireties.  *Palm Bay Imps.*, 396 F.3d at 1371.

In the current case, the duly noticed deposition testimony of O.C.'s owner Leighton

Moore and the 30(b)(6) deposition of O.C. will be used to detail the differences in the parties'

marks and how the marks appear and are used in commerce.  Fee Decl. ¶ 43.  Additionally,

Coryn's noticed inspection of the land and buildings in the possession or control of O.C.,

scheduled to take place on September 5, 2009, will further evidence the differences in the

context in which the parties' marks appear.  *Id.* ¶ 44; *see also Phillips Petroleum Co. v. C.J.*

*Webb, Inc.*, 442 F.2d 1376 (CCPA 1971) (finding that although the PTO only considers the mark

as shown in the application, in determining whether a mark is confusingly similar to another, it is

appropriate in limited circumstances to compare actual specimens of the marks in use that assist

in determining "[w]hat impression would be made on purchasers seeing the mark"); *see also*

*Presto Prods., Inc. v. Nick-Pak Prods. Inc.*, 9 U.S.P.Q.2d 1895, 1897 (TTAB 1988) (finding that

the significance of a mark is not determined in the abstract, but in connection with the goods or

services to which the mark is applied and the context in which it is used because that is how purchasers encounter the mark); *In re Nationwide Indus.*, 6 U.S.P.Q.2d 1882, 1884 (TTAB 1988) ("Thus, it is settled that evidence of the context in which a mark is used on labels, packaging, advertising, etc., is probative of the significance which the mark is likely to project to purchasers.").

### 7.    Lack of Bad Faith

Although not discussed by the TTAB, a party's lack of bad faith in adopting a mark, when combined with other factors, can weigh against a finding of likelihood of confusion. *See George & Co.*, 2009 U.S. App. LEXIS 16415, at *26 (finding that a lack of evidence of bad faith "militated against a finding of a likelihood of confusion").   Here, Coryn served admissions requests on August 7, 2009, seeking admissions that O.C. has no evidence that Coryn acted in bad faith at the time it adopted the SECRETS mark.   Fee Decl. ¶ 46.   Additionally, the duly noticed deposition testimony of O.C.'s owner Leighton Moore and the 30(b)(6) deposition of O.C. will be used to further detail O.C.'s lack of evidence that Coryn acted in bad faith in adopting the SECRETS mark. *Id.* ¶ 47.   The absence of any evidence of bad faith, when coupled with Coryn's expert survey showing *de minimis* actual confusion and the additional evidence already disclosed and contemplated as detailed above, leads to the "inescapable conclusion that there is no likelihood of confusion." *See George & Co.*, 2009 U.S. App. LEXIS 16415, at *33.

## III.    CONCLUSION

Although still in the midst of conducting fact discovery, Coryn has introduced new evidence (including the Hollander Survey as well as evidence probative of the weakness of the SEACRETS mark, consumer sophistication and purchase care, and the absence of any bad-faith

intent), which is more than sufficient to rebut the Board's August 20, 2008 decision cancelling Coryn's SECRETS registrations, and, at a minimum, create issues of material fact sufficient to overcome summary judgment affirming the Board's decision.  Additionally, the parties are currently in the middle of discovery, and there is a substantial amount of discovery and evidence still outstanding, all of which is directly probative on the issues raised in O.C.'s premature Motion.

Therefore, for all of the reasons detailed above and in the attached Fee Declaration, Coryn respectfully requests that the Court deny O.C.'s Motion and permit Coryn "the full opportunity to develop its case" by "obtaining the kind of evidence that the appeal is designed to permit."  *Carefree Trading,* 19 Fed. Appx. at 847.  Alternatively, the Court should order a continuance to enable Coryn to finish obtaining the discovery required to thoroughly and adequately respond to O.C.'s Motion.

DATED:  August 14, 2009                    Respectfully submitted,


                                           /s/  J. Kevin Fee
                                           Wade B. Wilson (Fed. Bar No. 15381)
                                           J. Kevin Fee
                                           Kristin H. Altoff
                                           Daniel Marks
                                           **Morgan, Lewis & Bockius LLP**
                                           1111 Pennsylvania Avenue, N.W.
                                           Washington, D.C. 20004
                                           202.739.3000
                                           202.739.3001 Facsimile
                                           wwilson@morganlewis.com
                                           jkfee@morganlewis.com
                                           kaltoff@morganlewis.com
                                           dmarks@morganlewis.com

                                           *Attorneys for Plaintiff/Counterclaim-*
                                           *Defendant and Third-Party Defendants*
                                           *The Coryn Group II, LLC, The Coryn Group,*
                                           *Inc. and AMResorts, LLC*