IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE CORYN GROUP II, LLC          *
                                 *
     V.                          *          Civil No. WDQ-08-2764
                                 *
O.C. SEACRETS, INC.              *
                                 *

MEMORANDUM OPINION

Before the Court are Defendant/Counter-Claim Plaintiff O.C. Seacrets, Inc.'s Motion to Compel Responses to Notice of 30(b)(6) Deposition (Paper No. 67) and Defendant/Counter-Claim Plaintiff O.C. Seacrets, Inc.'s Third Motion to Compel Production of Documents Used to Prepare Witness for 30(b)(6) Deposition Directed to AMResorts, LLC (Paper No. 68).  Both motions have been fully briefed.  The Court held a motions hearing on October 30, 2009, after which the parties made supplemental filings.  For the following reasons, the Court GRANTS in part and DENIES in part O.C. Seacrets' Motion to Compel Responses to Notice of 30(b)(6) Deposition (Paper No. 67), and GRANTS in part and DENIES in part O.C. Seacrets, Inc.'s Third Motion to Compel Production of Documents Used to Prepare Witness for 30(b)(6) Deposition Directed to AMResorts, LLC (Paper No. 68).

I.    BACKGROUND

1

This is a trademark infringement case that arises from the United States Trademark Trial and Appeal Board's (hereafter "TTAB") grant of O.C. Seacrets, Inc.'s petition to cancel Coryn Group's trademark registration for the mark "SECRETS." (Paper No. 67-2, 2). Coryn Group, II, LLC, successor in interest to Coryn Group, appealed to this Court, arguing that O.C. Seacrets' "SEACRETS" trademark, used in connection with restaurant and bar services, was confusingly similar to Coryn Group's trademark "SECRETS," used in the resort hotel industry. (Paper No. 1, 1-2; Paper No. 67-2, 2). O.C. Seacrets, Inc. counterclaimed on the basis of "reverse confusion," claiming that Coryn Group II, LLC, a junior user, overwhelmed the market with its use of a confusingly similar mark that effectively devalued O.C. Seacrets's mark. (Paper No. 68-2, 2). AMResorts, LLC, a company that appears to manage and develop resort hotels that are licensees of Coryn Group's "SECRETS" mark, is a third-party defendant. (Paper No. 67-2, 8). Coryn Group, Coryn Group II, and AMResorts are all part of a complex organization of on- and off-shore businesses that are owned by various members of the Mullen family. (Paper No. 67-2, 3).

All claims and counterclaims in this case hinge on whether the two marks are likely to be confused, which depends on several factors including: (1) the strength or distinctiveness of the marks; (2) the similarity of the marks; (3) the

similarity of the goods and services the marks identify; (4) the similarity of the facilities the parties use in their businesses; (5) the similarity of advertising used by the parties; (6) the parties' intent; and (7) actual confusion. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984).  Should the Court determine that any party's registered trademark rights were violated, disgorgement of profits received as a result of that violation, among other damages, are appropriate.  15 U.S.C. § 1117.

## II.  DISCUSSION

### 1.  Motion to Compel Responses to Notice of 30(b)(6) Deposition (Paper No. 67)

On October 8, 2009, O.C. Seacrets filed a Motion to Compel Responses to Notice of 30(b)(6) Deposition directed to AMResorts in response to AMResorts' objections to the topics listed by O.C. Seacrets for a Rule 30(b)(6) deposition.  (Paper No. 67). AMResorts opposed the motion on the grounds that it was prematurely filed and that, in any event, the deposition had already taken place and "the concerns anticipated by O.C. in its motion to compel did not occur." (Paper No. 75).  O.C. Seacrets responded that, while the deposition did proceed, AMResorts' Rule 30(b)(6) designee was not adequately prepared to testify on most of the topics listed in the Rule 30(b)(6) notice—particularly those involving AMResorts' ownership structure and

related entities.  (Paper No. 80).  The Court held a motions hearing on October 30, 2009 and ordered the parties to make supplemental filings following the hearing which, after numerous extensions of times, they have now made.

The disputed topics noted for deposition include the ownership and organizational structure of AMResorts and its affiliates and the "sales, revenues, and profits of AMResorts for all products and services offered in connection with the SECRETS mark," any fees or revenues received or expenditures incurred by AMResorts or any of the hotel properties it formerly or currently managed related to use of the SECRETS mark, as well as the ownership structure of hotels currently managed by AMResorts (Secrets Capri Riviera Cancun, Secrets Silversands Riviera Cancun, Secrets Maroma Beach Riviera Maya), that were in the past managed by AMResorts (Secrets Excellence Riviera Cancun, Secrets Excellence Punta Cana), and that will in the future be managed by AMResorts (Secrets St. James Montego Bay, Secrets Wild Orchid Montego Bay), Secrets Punta Cana Resort & Spa).  (Paper No. 80-2, 1-7).  O.C. Seacrets also sought to depose AMResorts on any person or entity "working or participating in active concert with AMResorts and the SECRETS mark" and asked for AMResorts' consolidated financial statements and its profit and loss statements as well as any commissions, revenue sharing, fees, advertising and marketing agreements and

4

arrangements between AMResorts and any other entity that has operated or now operates under the SECRETS mark.  (Id.).

To the extent information sought in a Rule 30(b)(6) deposition is relevant to the claims or defenses in the case and is known or reasonably available to the corporation, it must provide a corporate designee or multiple designees prepared to provide that information.  FED. R. CIV. P. 30(b)(6); FED. R. CIV. P. 26(b)(1).  Indeed, the corporation "is expected to create a witness or witnesses with responsive knowledge," and in doing so must make a good faith effort to "find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge."  Wilson v. Lakner, 228 F.R.D. 524, 528-29 (D. Md. 2005) (emphasis added).  Information about a Rule 30(b)(6) deponent's corporate affiliates and subsidiaries is no different.  AMResorts encourages this Court to find that the financial information involving AMResorts' affiliates is irrelevant by following the Eastern District of Pennsylvania's decision in a related case, which denied discovery of financial information from non-parties to the extent it was not directly tied to the SECRETS mark on relevancy grounds.  (Paper No. 75 (citing Order Granting in Part and Denying in Part Motion to Quash, 3 n.1, Coryn Group II, LLC v. O.C. Seacrets, Inc., No. 09-mc-161 (E.D. Pa. Oct. 14, 2009))).  However, the decision of the District Court for the Eastern District of Pennsylvania

permitted discovery where the scope of information requested was limited to matters related to the SECRETS mark, and denied discovery only as to broad requests for "monthly detailed profit and loss statements" with no limiting language. (Id.). Instead, the court modified these broad requests to include only "profit and loss information as it relates to the Secrets mark, including the percentage of Petitioners' profits or losses attributable to the Secrets mark." (Id.).

While most of the topics noticed for the Rule 30(b)(6) deposition are tailored for relevance to the claims and defenses involved in this case, some of the topics noticed are not sufficiently limited (Paper No. 108, 8-10). Specifically, Topics 39, 40, 41, and 43 broadly request "AMResorts' consolidated financial statements," "AMResorts' proposed budgets from January 2002 to present," and "AMResorts' profit and loss statements," and "[o]wnership relationship and structure between AMResorts and any other person." (Paper No. 108, 9). The Court finds the Eastern District of Pennsylvania's approach reasonable, and therefore finds that the topics noticed are relevant, with the exception of topics 39, 40, 41, and 43 which shall be limited for relevance to the extent to which the information requested relates to use of the Secrets mark by it and its affiliates to the extent the information is "known or reasonably available" to AMResorts, as discussed below.

For these topics, Rule 30(b)(6) required AMResorts to produce a corporate designee (or multiple corporate designees) for deposition that was prepared with the corporation's knowledge as to those topics to the extent the information was "known or reasonably available" to AMResorts, LLC as a corporate entity.[1] FED. R. CIV. P. 30(b)(6); Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd., 511 F.3d 437, 445 (4th Cir. 2007). As AMResorts acknowledges, a corporate designee need not acquire knowledge from an affiliate on matters in which the deposed corporation was entirely uninvolved, In re Ski Train Fire of November 11, 2000, Kaprun, Austria, MDL No. 1428, 2006 WL 1328259, 2006 U.S. Dist. LEXIS 29987 (S.D.N.Y. May 16, 2006), but may be required to designate witnesses prepared to discuss topics involving "related companies" to the extent the corporation has knowledge of those topics, Honda Lease Trust v. Middlesex Mut. Assur. Co., Civ. No. 05-1426, 2008 WL 3285242, 2008 U.S. Dist. LEXIS 60766, **8-9 (D. Conn. Aug. 7, 2008). See also S.C. Johnson & Son, Inc. v. The Dial Corp., Civ. No. 08-4696, 2008 WL 4223659, 2008 U.S. Dist. LEXIS 76320 (N.D. Ill. Sept. 10, 2008); (requiring a company to provide a corporate designee for deposition on specific topics related to its subsidiary despite "eight degrees of ownership separation" where

---

[1] A Rule 30(b)(6) designee is not limited to his personal knowledge, but rather to the knowledge of the corporation that he represents. Nutramax Labs., Inc. v. Twin Labs., Inc., 183 F.R.D. 458, 472 (D. Md. 1998).

7

subsidiary's profits were included in the deposed company's SEC filings); Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., Civ. No. 01-3016, 2002 WL 1835439, 2002 U.S. Dist. LEXIS 14682, **9-13 (S.D.N.Y. Aug. 8, 2002) (borrowing Rule 34's requirement that parties produce documents within their "possession, custody or control" as a guiding light in the absence of authority on whether a corporation must provide a corporate designee with knowledge of subsidiary or affiliated companies for a Rule 30(b)(6) deposition).  Where a company fails to provide sufficient evidence why it would not have access to the basic information of its affiliate(s), that information is presumed to be known or reasonably available to the corporation.  Murphy v. Kmart Corp., 255 F.R.D. 497, 509 (S.D. 2009) (compelling a corporate deponent discuss the relevant history of four related corporate entities and discussing that, in providing such a deponent, the company may either prepare its own employee to be deposed or may designate a knowledgeable employee of one of its affiliates).

The determination of whether information is known or reasonably available to a corporation requires a fact-specific analysis.  As this Court understands it, O.C. Seacrets does not request information regarding the internal operations of AMResorts' affiliates, but rather about the relationships and flow of money among AMResorts and its affiliates in relation to

their use of the SECRETS mark.   AMResorts suggests that the
degree of separation between AMResorts and its affiliates alone
shields AMResorts from responding to discovery questions related
to its affiliates and provides no facts to support its lack of
responsive knowledge, (Paper No. 93, 3-7), while O.C. Seacrets
has provided presentations and consolidated spreadsheets, among
other documentation, that show AMResorts and many of its
affiliates operating as a unit, sharing information amongst
themselves.   (Paper No. 108).   AMResorts and its affiliates
share many corporate officers in common.   (Id.).   Indeed, the
President and CEO of AMResorts reviews financial information of
many of these organizations in a consolidated statement on a
monthly, quarterly, and annual basis.   (Id.).   After holding a
hearing on this matter and reviewing the parties' supplemental
filings, no convincing evidence has been provided to establish
that the information sought is not known or reasonably available
to AMResorts.   Therefore, AMResorts should have provided a
corporate designee (or multiple designees, if necessary) that
was knowledgeable of all noticed topics to the extent they
requested relevant information, as discussed above.

    Where a corporate deponent fails to provide an adequately
prepared designee for deposition, sanctions are proper.   E.g.,
Int'l Assoc. of Machinists & Aerospace Workers v. Werner-Masuda,
390 F. Supp. 2d 479, 489 (D. Md. 2005); Wilson, 228 F.R.D. at

529-30.  On the one hand, a corporation that wholly fails to educate a corporate designee without justification is subject to mandatory monetary sanctions under Rule 37(d).  Werner-Masuda, 390 F. Supp. 2d at 489.  On the other hand, a corporation that engages in good faith efforts to prepare and whose witness provides "substantial testimony concerning the subject areas of their designation[]" despite inadequate preparation may not be subject to sanctions.  Wilson, 228 F.R.D. at 530.  Nonetheless, where "unanswered information is significant enough, the 30(b)(6) deposition may have to be reconvened, possibly with a new witness," at the corporation's expense.  Id.; The Paul Revere Life Ins. Co. v. Jafari, 206 F.R.D. 126, 128 (D. Md. 2002).

Here, AMResorts' corporate designee, Mr. Coll, professed a lack of knowledge in response to questions asked during deposition on the vast majority of topics on which he was designated to testify.  (See generally Paper No. 108, Ex. A (transcript of Mr. Coll's deposition)).  He even lacked knowledge of contracts to which AMResorts, the corporation on whose behalf he was designated to testify, was a party and which AMResorts provided to O.C. Seacrets in discovery.  (Paper No. 108, 16-17 (quoting transcript of Mr. Coll's deposition)).  Therefore, AMResorts must produce a fully prepared designee (or designees) capable of responding appropriately at a Rule

30(b)(6) deposition on noticed topics 1, 6, 17-24, 31-47, with the exception of topics 39, 40, 41, and 43 which shall be limited to the extent to which they relate to use of the Secrets mark by AMResorts and its affiliates.  This deposition will be conducted within 14 days of the date of this Order at the expense of AMResorts.  O.C. Seacrets shall file an appropriate petition for costs incurred in deposition resumption, such as travel and accommodations.  Since the Court did not find all of the topics relevant, the Court shall not award O.C. Seacrets its attorney's fees and costs incurred in relation to its Motion to Compel.

**2.    Motion to Compel Production of Documents Used to Prepare 30(b)(6) Deponent (Paper No. 68).**

O.C. Seacrets contends that it is entitled to discovery of the documents used to prepare Mr. Kevin Wojciechowski for deposition (Paper No. 106), while AMResorts argues that the documents used to prepare Mr. Wojciechowski are protected from discovery by the work product doctrine (Paper No. 76, 3-4). Where documents used to prepare a deponent are not privileged, that information must be provided in discovery.  CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, 28 FED. PRAC. & PROC. EVID. § 6187 (1993).  Where documents are privileged, however, a party may move for their disclosure despite their protected status when they are used to prepare a deponent or witness to provide testimony.  Id.  FED. R.

EVID. 612, which applies to depositions through FED. R. CIV. P. 30(c),[2] entitles an adverse party to discovery of any writing, even one subject to privilege, used to refresh a witness's memory for the purpose of testifying, whether his memory is refreshed "(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice."[3]  FED. R. EVID. 612; Nutramax Labs., Inc. v. Twin Labs., Inc., 183 F.R.D. 458, 467 (D. Md. 1998).  Thus, although documents used to refresh a witness's memory while testifying must be produced, Rule 612 leaves to the Court's discretion whether to require production of documents reviewed to refresh a witness's memory in preparation for testifying. FED. R. EVID. 612; Nutramax, 183 F.R.D. at 467; Edna Selan Epstein, II The Attorney-Client Privilege and the Work-Product Doctrine 1107-08 (5th ed. 2007).  "In exercising discretion under Rule 612, the courts balance the need for disclosure, in order to examine the witness fully, against the need to protect

---

[2] Unlike some courts, this Court has applied FED. R. EVID. 612 to the context of deposition testimony.  Compare Nutramax, 183 F.R.D. at 467 (applying FED. R. EVID. 612 through FED. R. CIV. P. 30(b)(6) to require discovery of materials used to prepare a witness for deposition) with Omaha Pub. Power Dist. v. Foster Wheeler Corp., 109 F.R.D. 615, 616-17 (D. Neb. 1986) (commenting that FED. R. EVID. 612 does not apply to discovery of materials used to prepare a witness for deposition testimony, noting that "[t]he word 'testifying' as used in the Rule contemplates the presentation of evidence at a hearing before a judge or magistrate").  See also Sporck v. Peil, 759 F.2d 312, 317 (3d Cir. 1985) (applying FED. R. EVID. 612 to the deposition context through FED. R. CIV. P. 30(b)(6)).

[3] The Maryland rule, unlike the Federal rule, retains the rule's original formulation and allows access only to documents actually used to refresh recollection while testifying.  Compare FED. R. EVID. 612 with MD. R. EVID. 5-612.

work product, in order to encourage careful preparation."
Epstein at 1109.

The Court has conducted an *in camera* review of the
documents in question.  The documents are clearly not opinion
work product, as they "do not contain the mental impressions,
conclusions or opinions of the attorney . . . [or] fruits of the
attorney's mental processes."  In re John Doe, 662 F.2d 1073,
1076 n.2 (4th Cir. 1981).  The fact that a deponent may have
reviewed fact compilations with his attorney, or that his
attorney may have sensibly agreed or advised him to have his
subordinates collect factual information on the topics for which
he was designated, and particularly about which he lacked
personal knowledge, does not make such simple fact compilations
off limits work product.  See JOHN KIMPFLEN, ET AL., 10 FED. PROC., L.
ED. § 26:188 ("Documents that are merely factual recitations and
do not reveal an attorney's litigation strategy, thoughts, or
mental impressions are not protected by the work product
doctrine."); Nutramax, 183 F.R.D. at 467 ("If otherwise
discoverable documents, which do not contain pure expressions of
legal theories, mental impressions, conclusions or opinions of
counsel, are assembled by counsel, and are put to a testimonial
use in the litigation, then an implied limited waiver of the
work product doctrine takes place, and the documents themselves,
not their broad subject matter, are discoverable.").  While O.C.

13

Seacrets appears to concede that these eleven documents are work product (Paper No. 106, 2), that concession was obviously not fully informed.  O.C. Seacrets did not know of the subject or content of the documents or, of course, that they were merely compilations of fact responsive to deposition topics.  Moreover, having reviewed the documents and affidavit submitted in camera, and the Wojciehowski deposition, and other materials, the Court doubts that the documents are even protected work product.

There are times, of course, where the product of a lawyer's direction to compile certain facts can be privileged.  Where, for example, a lawyer directs research on the weather conditions at a certain location as a possible contributing factor to an accident, the resulting written document is work product, subject to production only on demonstration of substantial need. See In re Grand Jury Proceedings, 410 F.3d 247, 250 (4th Cir. 2005) (commenting that fact work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship).  But if a party asks a meteorological service defendant for that same information and defense counsel instructs the meteorological service to gather this information, that information certainly is not privileged. Indeed, this is not the situation as in Allen, where counsel identifies among masses of documents those few that support a

14

particular legal theory.  Allen v. McGraw, 106 F.3d 582, 608

(4th Cir. 1997).  Neither is this the National Union situation:

> The immunity from discovery for fact work product has
> been described as an anti-freeloader rule designed to
> prohibit an adverse party from riding to court on the
> enterprise of another.

Nat'l Union, 967 F.2d at 985.  Rather, O.C. Seacrets here is

seeking simple facts, not opposing counsel's selection or

analysis of facts.  The eleven documents provided to the Court

for in camera review all consist of lists or tables of facts,

and do not include any analysis.  According to Mr.

Wojciechowski's affidavit, AMResorts' counsel advised him "of

the topics on which [he] would be expected to testify," and he

then directed his staff to prepare documents containing "a

variety of facts and other information addressing certain of the

potential deposition topics." (Wojciechowski Decl. at 2).  Mr.

Wojciechowski then reviewed the eleven documents with counsel.

(Id. at 3).  Based on the facts and Mr. Wochiechowski's

declarations, these documents do not reflect AMResorts'

counsel's litigation theories or thought processes, but are

merely an itemized, factual response to the 30(b)(6) topics

about which Mr. Wojciechowski was bound to educate himself.

Even if fact work product, there would be a substantial need as

the information is only available from the defendant.  CITE.

But if treated as work product, (See Paper No. 76, 4; Paper No.

106), they nonetheless must be produced, as discussed below under F.R.E. 612.

The determining question for this Court is whether use of these documents to prepare Mr. Wojciechowski for a Rule 30(b)(6) deposition on behalf of AMResorts constituted a "testimonial" use of the records sufficient to trigger a waiver of the work product doctrine, thereby entitling O.C. Seacrets to discovery of the documents.  "[T]hree foundational elements must be met before Rule 612 is applicable with respect to documents reviewed by a witness to prepare for a deposition: (1) a witness must use a writing to refresh his or her memory; (2) for the purpose of testifying; and (3) the court must determine that, in the interest of justice, the adverse party is entitled to see the writing."  Nutramax, 183 F.R.D. at 468.

First, it could be said that it is the deponent's memory -- here, AMResorts -- whose memory must be refreshed to meet this element.  Nutramax considered all 30(b)(6) testimony together, not distinguishing for analytical purposes under Rule 612 testimony on topics of which the actual deponent had no personal knowledge and therefore could not be "refreshed."  Rather, the Nutramax court acknowledged that the "status of the witness" is a factor in determining whether to require production of the disputed documents, specifically finding that: "[t]here is a greater need to know what materials were reviewed by expert and

designee witnesses in preparation for deposition since the substance of their testimony may be based on sources beyond personal knowledge." <u>Nutramax</u>, 183 F.R.D. at 469.  While indeed an adverse party has a "heightened need to discover the factual basis for [a Rule 30(b)(6) designee's] testimony," <u>id.</u> at 472, it bears noting that documents are not protected by the fact that Mr. Wojciechowski, the corporation's designee, lacked independent knowledge of their contents.  As the corporate entity indisputably had prior knowledge of the facts contained in the documents, but its designee needed to review these documents in order to testify as to that corporate knowledge, this element is met.[4]

Second, this Court allows access to documents used to refresh the recollection of a deponent "for the purpose of

---

[4]Alternatively, it might be argued that Rule 612 has no applicability to this situation at all as this witness' recollection is not in fact being "refreshed" as to many subjects.  In that case, ordinary principles of discovery would control.  Thus, as substantial need for the documents is demonstrable and O.C. Seacrets is unable to secure the equivalent of these documents by alternate means without undue hardship, the documents would be discoverable under this scenario as well.  <u>See, e.g.</u>, <u>In re Grand Jury Proceedings</u>, 410 F.3d 247, 250 (4th Cir. 2005) (<u>quoting</u> <u>In re Grand Jury Proceedings</u>, 33 F.3d 342, 348 (4th Cir. 1994) ("Fact work product which consists of documents prepared by an attorney that do not contain the attorney's mental impressions 'can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'")); <u>In re Comair Disaster Litig.</u>, 100 F.R.D. 350, 353 (E.D. Ky. 1983) (commenting that, where a witness uses work-product materials to refresh his recollection, the policy in favor of effective cross-examination establishes substantial need for production of those documents, as, in the absence of production, an opposing party "cannot know or inquire into the extent to which the witness's testimony has been shaded by counsel's presentation of the factual background").

testifying," whether the "refreshing" takes place before or during the deposition itself.  Nutramax, 183 F.R.D. at 468. However, access is "limited only to those writings which may fairly be said in part to have an impact upon the testimony of the witness."  Id. (collecting authority).  See also Epstein at 1111 ("If the witness does not . . . testify concerning the content of the document, then the privilege is not waived."). In making this determination, the Court has significant discretion.  1 MCCORMICK ON EVID. § 9 (recognizing the Court's discretion to determine whether a witness's memory was refreshed by review of a document, commenting that "[w]hen there is no seeming connection between the contents of the memorandum and the witness's testimony, [a judge] may find that [the memorandum does not refresh]; she need not accept at face value the witness's claim that reviewing the memo revived the witness's memory").  Moreover, in the context of a 30(b)(6) deposition, where a corporate designee testifies on topics of which he denies any personal knowledge, he is an "empty vessel" and documents reviewed on those topics in preparation for the deposition necessarily informed his testimony.

AMResorts notes that counsel for O.C. Seacrets never asked Mr. Wojciechowski during his deposition whether the documents he reviewed informed his testimony, refreshed his recollection, or "could have shed any additional light on any of the subjects

being discussed." (Paper No. 96, 7).  While that may be better practice, the Court may still determine whether the documents were used through an *in camera* review of the documents and the deposition transcript, as it has done here.  See, e.g., 10 FED. PROC., L. ED. § 26:234 ("Waiver under [FED. R. EVID. 612] requires a showing that the document actually influenced the witness's testimony, although actual refreshment of the witness's recollection is immaterial."); Nutramax, 183 F.R.D. at 473 (noting that the two first elements of Rule 612 may be established by either "direct proof (an admission by the deponent that review of the documents aided memory) or circumstantial proof, from which an inference may be drawn whether such assistance was received"); Butler Mfng. Co., Inc. v. Americold Corp., 148 F.R.D. 275, 278 (D. Kan. 1993) (commenting that "a party must delve more thoroughly into the circumstances in order to furnish an adequate basis to use Rule 612 as a tool to obtain disclosure of an otherwise protected document," but nonetheless conducting an *in camera* review of the documents, deposition transcript, and affidavit to determine whether the deponent's testimony was influenced by his preparatory review of the documents).

Here, Mr. Kevin Wojciechowski, Vice President of Sales and Marketing for AMResorts, LLC, testified as a Rule 30(b)(6) designee for AMResorts on subjects including AMResorts'

promotional, marketing, advertising, and sales activities and expenditures.  (Wojciechowski Deposition Transcript at 12-14). He advised the Court that he reviewed several documents and other information and met with counsel to prepare for his deposition.  (Wojciechowski Declaration at 2-3).  Specifically, he had his team prepare some information, in written form, for him to review in preparation for his deposition.  (Id.).  Eleven documents were submitted for this Court's *in camera* review which correspond to, and provide information relevant to, certain of the 30(b)(6) topics for which Mr. Wojciechowski was offered as AMResorts' corporate designee:  Indeed each of the withheld documents was captioned with a 30(b)(6) topic.

As to **in camera document number 1 (topic 4)**, Mr. Wojciechowski advised the Court that he was already aware of the distribution channels listed in this document.  (Id. at 3).  At his deposition, he testified on the distribution channels in greater detail than provided in the document.  (See, e.g., Dep. Tr. at 95-96, 160, 173-77, 241-50).

As to **in camera document number 2 (topic 5)**, Mr. Wojciechowski advised the Court that he had general knowledge of advertising and promotional expenditures, but had no independent knowledge of the specific facts and figures contained in this document.  (Wojciechowski Decl. at 3-4).  At his deposition, Mr. Wojciechowski testified on advertising and promotional

expenditures at great length, relying in part on exhibits to the deposition that were not provide to the Court for its *in camera* review. (See, e.g., Dep. Tr. at 128-31, 192-265, 323-36).

As to *in camera* **document number 3 (topics 7 and 9)**, Mr. Wojciechowski advised the Court that he had no independent knowledge of the marketing agreements signed and consultants to advertising and promotions listed in this document. (Wojciechowski Decl. at 4). At his deposition, Mr. Wojciechowski discussed marketing agreements and promotions generally, but did not name the entities listed in this document. (See, e.g., Dep. Tr. at 159-87).

As to *in camera* **document number 4 (topic 8),** Mr. Wojciechowski advised the Court that he had independent knowledge of the methods and forms of advertising contained in the document. (Wojciechowski Decl. at 4). At his deposition, Mr. Wojciwchowski discussed this information in greater detail than provided by the document. (See, e.g., Dep. Tr. at 115-28, 138-59).

As to *in camera* **document number 5 (topic 13)**, Mr. Wojciechowski advised the Court that he had no independent knowledge of the websites listed in this document. (Wojciechowski Decl. at 4). At his deposition, Mr. Wojciwchowski did not discuss this information or any topics related to this information.

21

As to *in camera* **document number 6 (topic 14)**, Mr. Wojciechowski advised the Court that he had general knowledge of AMResorts' partner travel agents and tour operators, he had no independent knowledge of the specific partners listed in the document. (Wojciechowski Decl. at 4). At his deposition, Mr. Wojciwchowski discussed this information on several occasions, mentioning some, but not all, of the partners listed in the document. (See, e.g., Dep. Tr. at 144, 160-73).

As to *in camera* **document number 7 (topic 16)**, Mr. Wojciechowski advised the Court that he had independent knowledge of the customers and channels of trade listed in the document. (Wojciechowski Decl. at 4-5). At his deposition, Mr. Wojciwchowski discussed this information in greater detail than provided by the document. (See, e.g., Dep. Tr. at 115-28, 138-87).

As to *in camera* **document number 8 (topic 26)**, Mr. Wojciechowski advised the Court that he had general knowledge of the geographic breakdown of customers, but no specific knowledge of the breakdown provided in this document. (Wojciechowski Decl. at 5). At his deposition, Mr. Wojciechowski discussed this information and at times speculated, giving information that contradicted that provided in the document. (See, e.g., Dep. Tr. at 350-53).

As to *in camera* **document number 9 (topic 28)**, Mr.
Wojciechowski advised the Court that he had independent
knowledge of the websites listed in the document.
(Wojciechowski Decl. at 5).  At his deposition, Mr.
Wojciwchowski discussed some, but not all, of the websites
listed in this document.  (See, e.g., Dep. Tr. at 242-43, 276).

As to *in camera* **document number 10 (topic 29)**, Mr.
Wojciechowski advised the Court that he had independent
knowledge of the marketing and promotional activities listed in
the document.  (Wojciechowski Decl. at 5).  At his deposition,
Mr. Wojciwchowski discussed this information, but denied
knowledge as to some of the information and contradicted the
contents of the document.  (See, e.g., Dep. Tr. at 115-28, 138-
87).

As to *in camera* **document number 11 (topic 30)**, Mr.
Wojciechowski advised the Court that he had independent
knowledge of the marketing activities and cooperative marketing
arrangements listed in the document.  (Wojciechowski Decl. at
6).  At his deposition, Mr. Wojciechowski discussed this
information in significant detail, but did not discuss
everything noted in the document (See, e.g., Dep. Tr. at 159-87,
239).

Thus, the Court finds that documents 2, 3, 6, and 8
necessarily informed Mr. Wojciechowski's testimony given his

lack of personal knowledge on these topics and, with the exception of document five, the remaining documents (documents 1, 4, 7, 9, 10, and 11) had at least "some impact" on Mr. Wojciechowski's deposition testimony, as there is adequate "nexus between the contents of the writing[s] and the nature of the fact[s] purportedly remembered."  1 McCORMICK ON EVID. § 9.

Third, for those documents that the Court has found meet the first two elements and so have been put to testimonial use, the Court must balance "the policies underlying the work product doctrine against the need for disclosure to promote effective cross-examination and impeachment" in determining whether, in the interest of justice, O.C. Seacrets is entitled to see these documents.  Nutramax, 183 F.R.D. at 468.  In making this determination, the Court will examine factors including, but not limited to, the witness's status and his actual ability to recall information from memory, how many documents the witness reviewed, whether the documents contained "pure" attorney work product, and whether the documents were previously disclosed.[5] Nutramax, 183 F.R.D. at 469-70.

---

[5] This Court previously articulated an illustrative list of some of the relevant factors, which included (1) the status of the witness; (2) the nature of the issue in dispute; (3) when the events took place; (4) when the documents were reviewed; (5) the number of documents reviewed; (6) whether the witness prepared the document(s) reviewed; (7) whether the documents reviewed contain, in whole or in part, "pure" attorney work product; (8) whether the documents reviewed previously have been disclosed; and (9) whether there are credible concerns regarding manipulation, concealment, or destruction of evidence.  Nutramax, 183 F.R.D. at 469-70.

As a Rule 30(b)(6) corporate designee, Mr. Wojciechowski was required to testify as to AMResorts' corporate knowledge, and thus could only testify as to some facts on the basis of what was memorialized in writing or communicated from another, knowledgeable person.  Thus, Mr. Wojciechowski's status creates "a heightened need to discover the factual basis for his testimony."  Nutramax, 183 F.R.D. at 472.  Only 11 documents are at issue, all of which were created by Mr. Wojciechowski's staff at his direction, following his conversations with AMResorts' counsel, in preparation for his deposition.[6]

As discussed above, the subjects of the documents and, with the exception of document 5, the majority of their content, were disclosed at Mr. Wojciechowski's deposition.  Such a weak interest in favor of protecting these documents does not balance against the need for disclosure in this case.  Rather, particularly in the context of a Rule 30(b)(6) designee, "[i]t is all too easy for a witness to testify that his recollection is vague . . . [and] rigorous cross examination is needed to test such self-serving statements by focused, analytical questioning . . . to test the witness's assertions."  Id. at 473.  Where a 30(b)(6) deponent has no personal (or independent) knowledge of a topic, factual documents prepared for him to

---

[6] There is nothing to indicate that those conversations "guided" the fact compilations in any strategic sense.  The documents appear to be straightforward fact compilations responsive to the topics.

allow him to discharge his obligations under Rule 30(b)(6) must necessarily be produced.  How would it serve the pursuit of truth to shield such information, where the very same information would be available through other discovery devices? Denial of access would only cloud, rather than clarify, corporate knowledge.

Therefore, with the exception of document five, which was not implicated by Mr. Wojciechowski's deposition testimony, this Court concludes that any work product protection applicable to the documents used to prepare Mr. Wojciechowski for his deposition was waived and the documents are therefore discoverable and must be provided to O.C. Seacrets within three (3) days of the date of this Order.

### III. CONCLUSION

As set forth in the Court's Order, the Court GRANTS in part and DENIES in part O.C. Seacrets' Motion to Compel Responses to Notice of 30(b)(6) Deposition (Paper No. 67), and GRANTS in part and DENIES in part O.C. Seacrets, Inc.'s Third Motion to Compel Production of Documents Used to Prepare Witness for 30(b)(6) Deposition Directed to AMResorts, LLC (Paper No. 68).  AMResorts must produce a fully prepared designee (or designees) capable of responding appropriately at a Rule 30(b)(6) deposition on topics 1, 6, 17-24, 31-47, with the exception of topics 39, 40, 41, and 43 which shall be limited to the extent to which the information

requested relates to use of the Secrets mark by it and its affiliates.  This deposition will be conducted within 14 days of the date of this Order at the expense of AMResorts.  O.C. Seacrets shall file an appropriate petition for costs incurred in deposition resumption, such as travel and accommodations. AMResorts shall further disclose the documents reviewed by Mr. Wojciechowski in preparation for his deposition with the exception of document five within three (3) days of the date of this Order.


Date: 2/1/10                            _____/s/_____
                                       Susan K. Gauvey
                                       United States Magistrate Judge