IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

THE CORYN GROUP II, LLC,

    Plaintiff,

    v.                              CIVIL NO.: WDQ-08-2764

O.C. SEACRETS, INC.,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

The Coryn Group II, LLC ("Coryn II") appealed the Trademark Trial and Appeal Board's ("TTAB") cancellation of its registration for the mark "SECRETS" for "resort hotel services" and its denial of other relief. O.C. Seacrets ("O.C.") counterclaimed against Coryn II, and sued the Coryn Group, Inc., and AMR Resorts, LLC, (collectively "Coryn") under the Lanham Act and Maryland common law. For the following reasons, Coryn's motion to bifurcate trial was denied.[1]

I.    Background

O.C., a Maryland corporation, owns and operates "Seacrets," a Jamaican-themed "entertainment complex" in Ocean City, Maryland. Leighton Moore Dep. 83:10-98:8, Oct. 2, 2006. O.C.'s federally registered trademark "SEACRETS" was issued on

---

[1] O.C.'s unopposed motion to seal its exhibit, ECF No. 250, was granted.

October 7, 1997 for "restaurant and bar services." ECF No. 94, Ex. 3.

On June 22, 2000, Coryn filed an intent-to-use application for the mark SECRETS for "resort hotel services" with the United States Patent and Trademark Office ("USPTO"). ECF No. 1 ¶ 6. On October 7, 2003, the USPTO registered the SECRETS mark and assigned it U.S. Registration No. 2772061. *Id.* ¶ 7.

On August 20, 2008, the TTAB ordered the cancellation of Coryn's registration because O.C. had a priority of usage in its SEACRETS mark and there was a likelihood of confusion between the marks. *Id.* ¶ 10. The TTAB also denied Coryn's petition for partial cancellation or restriction because it found that the proposed restrictions would not avoid confusion. *Id.*

On October 20, 2008, Coryn appealed the TTAB's decision to this Court. ECF No. 1. On December 10, 2008, O.C. counterclaimed for trademark infringement and unfair competition under the Lanham Act and Maryland common law. ECF No. 29.

On May 10, 2010, the parties submitted a joint proposed pre-trial order. ECF no. 125 (sealed). Pre-trial motions were due by January 10, 2011. ECF No. 162.[2] On January 10, 2011, O.C. moved to set the order of proof at trial and realign the parties. ECF No. 187. In its opposition, Coryn emphasized that

---

[2] Trial was originally scheduled for February 7, 2011, ECF No. 128, but was postponed to October 31, 2011 due to a scheduling conflict with a criminal matter, ECF Nos. 214, 216.

"because O.C. moved . . . on the last possible day, this issue will not be fully briefed, let alone decided, until the eve of trial," and that granting the motion so close to trial "would confuse, rather than assist the presentation of evidence." ECF No. 202 at 5.

On March 10, 2011, the Court granted Coryn's motion to exclude the TTAB decision from presentation to the jury. ECF Nos. 220, 221. On March 23, 2011, O.C. moved for clarification or reconsideration of that order. ECF No. 223. On July 27, 2011, the Court granted O.C.'s motion for clarification and ordered that the parties would be permitted to introduce evidence "that O.C. Seacrets brought a TTAB cancellation proceeding against Coryn, and that the TTAB cancelled Coryn's registration," but not of the TTAB's "factual findings." ECF No. 235. On August 9, 2011, Coryn moved for reconsideration of the July clarification order. ECF No. 237. On September 30, 2011, the Court denied Coryn's motion for reconsideration. ECF No. 242.

On September 30, 2011, O.C. submitted an amended proposed pre-trial order to the Court, proposing to introduce new evidence not listed in the joint proposed pre-trial order, relating to "significant actions and events" occurring after the parties submitted the joint proposed order on May 10, 2010. ECF

No. 246. Coryn did not consent to the new proposed pre-trial order. *Id.*

On October 6, 2011, Coryn moved to bifurcate the trial on the issues of liability and damages. ECF No. 247. On October 14, 2011, O.C. opposed the motion, ECF No. 248, and moved to seal exhibit A to its opposition, ECF No. 250. On October 26, 2011, Coryn replied to O.C.'s opposition. ECF No. 253.

II. Discussion

    A.    The Standard

Under Fed. R. Civ. P. 42(b):

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The decision to order separate trials is within the Court's "sound discretion." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953). Although "complex" issues have justified bifurcation,[3] separating issues for trial "is not to be routinely ordered."[4] Bifurcation is inappropriate if the evidence on liability and

---

[3] *Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997) (bifurcating asbestos case because numerous causation issues had to be resolved before legal theories and damages could be addressed).

[4] Fed. R. Civ. P. 42(b) advisory committee's note; *see also Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F. Supp. 2d 451, 461 (D. Md. 2005) (refusing to bifurcate liability and damages in a complicated patent infringement case).

damages "overlap[s]." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2390 (3d ed. 2010).[5]

Determining the full extent of damages is unnecessary in any trial when the defendants prevail, but this "potential time savings is true in all bifurcated cases" and does not, in itself, justify bifurcation. *R.E. Linder Steel Erection Co., Inc. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530, 1534 (D. Md. 1984).[6]

B.   Judicial Economy

Coryn contended that bifurcation would promote judicial economy because it "may eliminate the need for a complicated and potentially unnecessary damages trial altogether." ECF No. 247 Attach. 1 at 8. That argument was unavailing.[7] *See Wedemeyer*, 585 F. Supp. at 1534.

---

[5] *See also R.E. Linder Steel Erection Co., Inc. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530, 1534 (D. Md. 1984) (denying motion to bifurcate when the parties intended to call the same witnesses in the liability and damages proceedings).

[6] Bifurcation was not necessary in a complex tort case when the "liability issues . . . [were] much more complex, and . . . require[d] comparatively more trial time, than the damages questions." *Wedemeyer*, 585 F. Supp. at 1534.

[7] Coryn relied on *Air-Shields, Inc. v. Boc Group, Inc.*, No. 91-2571, 1992 WL 315230 at *2 (D. Md. Feb. 28, 1992). In that patent infringement case, the court chose to grant the motion to bifurcate because, in addition to the fact that bifurcation might "circumvent the need for a lengthy damages phase," the liability issues were complex, and "proof of damages in this case is largely independent of proof of liability." *Id.* *T. Marzetti Co. v. Roakam Baking Co.*, No. 09-0584, 2010 WL 909582

Further, although the factors for determining whether there is a likelihood of confusion of two marks differ from those for determining whether to award damages in a trademark infringement case,[8] the parties' evidence overlapped on the issues, rendering a bifurcated trial inefficient. For example, Coryn's intent in adopting the mark, relevant to the likelihood of confusion analysis, *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996), related to whether it had the intent to confuse or deceive, a factor in determining whether to award damages, *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006). In addition, evidence of whether O.C.'s sales had been diverted, a damages factor, *id.*, would support or disprove

---

at *1 (S.D. Ohio, Mar. 11, 2010) was also unavailing. There, without bifurcation, both parties would have had to present evidence of damages to themselves. Determining liability first would necessarily relieve one of the parties from presenting damages, and judicial economy would be promoted. *Id.*

Although some of the damages testimony here was complicated, Coryn did not assert that the damages and liabilities issues were, together, so complex that bifurcation would promote judicial economy, see *Air-Shields*, 1992 WL 315230 at *2, and any benefit to judicial economy was speculative, not certain, see *T. Marzetti*, 2010 WL 909582 at *1. Despite any complexity, "the court [was] confident that the jury will be able to decide on issues of liability and damages." *Classen*, 403 F. Supp. 2d at 460.

[8] *Compare Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996) (listing nine factors to determine whether there is a likelihood of confusion) *with Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) (listing six factors to determine whether to award damages).

6

actual confusion or require evidence about the similarity of advertising and the sophistication of consumers, all related to the likelihood of confusion determination, *Sara Lee*, 81 F.3d at 463-64. Bifurcation would not have increased judicial economy.

C. Prejudice

Coryn argued that it would suffer undue prejudice if the jury decided the liability and damages issues in one proceeding because (1) the "highly prejudicial TTAB cancellation decision" is only relevant to damages, and (2) evidence of Coryn's size, relation to the AMR "corporate family," and financial condition would be prejudicial in the liability phase. ECF No. 247 Attach. 1 at 4.

On September 30, 2011, the Court held that "[t]he mere fact that the TTAB cancelled Coryn's trademark registration *is not prejudicial*." ECF No. 241 at 5 (emphasis added). The Court did not consider, a fourth time, Coryn's argument that the cancellation itself is prejudicial. Coryn's first argument failed.[9]

---

[9] O.C. contended that the Court held that "the TTAB Decision was to be admitted for all purposes." ECF No. 248 at 5. The Court has held that the fact that the TTAB cancelled Coryn's registration is relevant to determining whether to award damages under the *Synergistic Int'l, LLC v. Korman* factors, 470 F.3d 162, 175 (4th Cir. 2006). ECF No. 234 at 13-15.

Contrary to O.C.'s contention, Coryn did not concede that "intent" in general is a factor in the likelihood of confusion analysis. See ECF No. 125 at 29 (sealed) (discussing Coryn's

7

Coryn also contended that evidence of its and AMR's finances, and Coryn's relationship with other AMR companies would have been unfairly prejudicial at the liability stage even though it was relevant to determine damages. ECF No. 241 Attach. 1 at 6. Coryn was concerned that O.C. would introduce evidence that Coryn had manipulated its profits to understate profits related to the use of the SECRETS mark, and Coryn was able to pay the damages; it contended that both types of evidence "would be a not-so-thinly-veiled invitation for the jury to disregard the Court's instructions in determining the liability prong" of the case. ECF No. 241 Attach. 1 at 7.

The Court correctly assumed that the jury would be capable of distinguishing between liability evidence and damages evidence, and appropriate jury instructions addressed concerns about improper use of evidence. *Hamm v. Am. Home Prods. Corp.*,

---

intent *in adopting* the mark). O.C. suggests that the TTAB's cancellation is relevant to Coryn's "intent," a factor in the likelihood of confusion analysis. ECF No. 248 at 7. It relies on cases discussing the user's intent in *adopting* the mark, not in continuing to use the mark. *See id.* (citing *Surfvivor Media, Inc. v. Survivor Prods., Inc.*, 406 F.3d 625, 634 (9th Cir. 2005); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 232 (3d Cir. 2000)). Neither supported O.C.'s theory that the cancellation decision provided evidence of Coryn's intent that was relevant to the likelihood of confusion analysis, as Coryn adopted the mark before the TTAB cancelled it.

888 F. Supp. 1037, 1039 (E.D. Cal. 1995)[10]; cf. R.E. Linder, 585 F. Supp. at 1534.[11]

Coryn was not prejudiced in a single trial on damages and liability.

D. Potential Jury Confusion

Coryn contended that "the damages issues presented to the jury will be complex," and the jury would likely be confused because it will have to apply two balancing tests: the nine-factor likelihood of confusion test and the six-factor damages test. ECF No. 247 Attach. 1 at 11. As this Court noted before, "the Court [was] confident that the jury will be able to decide on issues of liability and damages." *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F. Supp. 2d 451, 461 (D. Md. 2005) (denying motion to bifurcate in complex patent case).

E. Newly Discovered Evidence

O.C. contended that Coryn's motion was "belated" because it was made on the eve of trial. ECF No. 248 at 14. Coryn asserts that it moved at the late date because "the sheer volume of new

---

[10] "The experience of this court does not support such a dark view of juror competence" to justify bifurcating trial to prevent improper use of evidence of the defendants' finances. *Hamm*, 888 F. Supp. at 1039.

[11] "[A]ny prejudice which defendants may encounter as a result of the punitive damages claims and claims for . . . injuries can be cured with instructions to the jury." *R.E. Linder*, 585 F. Supp. at 1534.

9

evidence and witnesses introduced by O.C. . . . [would] necessarily increase the complexity of the case." ECF No. 253 at 12.

The Court did not allow amendments to the pre-trial order on which the parties had not agreed. *Cf.* Local R. 106(3) (counsel must prepare the proposed pre-trial order jointly). Accordingly, O.C.'s proposed additional witnesses were not permitted to testify without Coryn's consent. With respect to updated revenue calculations, Coryn did not explain how presenting an updated revenue calculation to the jury would have made the damages presentation more complex or otherwise justify bifurcation of trial.

III. Conclusion

For the reasons stated above, Coryn's motion to bifurcate was denied.

_11/15/11_
Date

_/s/_
William D. Quarles, Jr.
United States District Judge