```
         IN THE UNITED STATES DISTRICT COURT FOR
       THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

THE CORYN GROUP II, LLC,            *

    Plaintiff,                   *

        v.                       *    CIVIL NO.: WDQ-08-2764

O.C. SEACRETS, INC.,                *

    Defendant.                   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

The Coryn Group II, LLC ("Coryn") appealed the Trademark Trial and Appeal Board's ("TTAB") cancellation of its registration for the mark "SECRETS" for "resort hotel services" and its denial of other relief. For the following reasons, the TTAB's decision will be affirmed.[1]

I.   Background

O.C. Seacrets ("O.C."), a Maryland corporation, owns and operates "Seacrets," a Jamaican-themed entertainment complex in Ocean City, Maryland. Leighton Moore Dep. 83:10-98:8, Oct. 2, 2006. O.C.'s federally registered trademark "SEACRETS" was issued on October 7, 1997 for "restaurant and bar services." ECF No. 94, Ex. 3.

---

[1] O.C.'s motion for summary affirmance or judgment on the administrative record will be denied.

On June 22, 2000, Coryn filed an intent-to-use application for the mark SECRETS for "resort hotel services" with the United States Patent and Trademark Office ("USPTO"). ECF No. 1 ¶ 6. On October 7, 2003, the USPTO registered the SECRETS mark and assigned it U.S. Registration No. 2772061. Id. ¶ 7.

On August 20, 2008, the TTAB ordered the cancellation of Coryn's registration because O.C. had priority of usage in its SEACRETS mark, and there was a likelihood of confusion between the marks.[2]  Id. ¶ 10.  The TTAB also denied Coryn's petition for partial cancellation or restriction, finding that the proposed restrictions would not avoid confusion.[3]  Id.

---

[2] The TTAB found that "typical consumers as well as industry experts may expect 'restaurant and bar services' on the one hand, and 'resort hotel' services on the other, to emanate from the same source."  ECF No. 1 Attach. 2 at 19.

[3] Coryn proposed that the TTAB amend O.C.'s services from "restaurant and bar services" to:

> Restaurant and bar services that are offered and provided to the general public, including families; are exclusively sold directly to customers; are advertised and promoted locally; are provided and purchased for fewer than sixteen hours a day; are provided at a free-standing site that functions primarily other than as an ultimate vacation destination; are provided to patrons who spend on average under $70; and are provided to the significant majority of annual customers and generate the significant majority of annual revenue during the summer season.

Coryn also proposed amending its recitation of services from "resort hotel" to:

On October 20, 2008, Coryn appealed the TTAB's decision to this Court. ECF No. 1. On December 10, 2008, O.C. counterclaimed for trademark infringement and unfair competition under the Lanham Act and Maryland common law. ECF No. 29.

On July 27, 2011 the Court decided to determine the TTAB appeal after the jury trial on O.C.'s counterclaims. ECF No. 234 at 9-10.

On November 8, 2011, after a seven-day trial, the jury returned a verdict for O.C., finding that SECRETS infringed O.C.'s SEACRETS mark and awarding O.C. $1 in compensatory damages and $265,035 in punitive damages. ECF No. 280. The Court entered partial judgment on the verdict. ECF No. 282.

II. Discussion

A. Standard of Review

Under 15 U.S.C. § 1071(b)(1), parties "dissatisfied" with a TTAB decision have "a remedy by civil action" in the United

---

> Resort hotel services, namely, providing accommodations for luxury, all-inclusive resort hotels featuring spas that are marketed and function primarily as romantic, warm weather vacation destinations primarily for couples, are restricted to adults only, and are visited primarily for periods of time lasting over four days, and that are offered and sold through distribution channels consisting principally of travel agencies, tour operators, other travel intermediaries, and Internet web sites; and arranging and making reservations for such luxury resort hotels.

ECF No. 1 Attach. 2 at 3-4.

States District Court in any district where venue is proper. This section allows the district court to "remedy erroneous decisions of the TTAB." *Aktieselskabet AF 21 Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 13 (D.C. Cir. 2008).

On appeal, the district court reviews the TTAB's legal conclusions *de novo*, and "sits in a dual capacity" on factual determinations. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001). The court acts as "an appellate reviewer of facts found by the TTAB," and "also [as] a fact-finder based on new evidence introduced to the court." *Id.*; *Skippy, Inc., v. Lipton Invs., Inc.*, 345 F. Supp. 2d 585, 586 (E.D. Va. 2002), *aff'd* 74 F. App'x 291 (4th Cir. 2003).

Although the court's review is *de novo* when there is new evidence, it "must afford deference to the [TTAB's] fact findings." *CAE, Inc.*, 267 F.3d at 674. Those findings are reviewed under the Administrative Procedure Act's substantial evidence standard.[4] *Skippy*, 345 F. Supp. 2d at 587.[5] Thus, the Court reviews the TTAB's findings for substantial evidence, and

---

[4] Under that standard, the district court must set aside findings and conclusions that are "arbitrary, capricious, or an abuse of discretion . . . [or] unsupported by substantial evidence." 5 U.S.C. § 706(2).

[5] "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skippy*, 345 F. Supp. 2d at 587 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)).

defers to those findings "unless new evidence 'carries thorough conviction.'" *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 729 F. Supp. 2d 246, 251 (D.D.C. 2010) (quoting *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 146 F.3d 983, 990 (D.C. Cir. 1998)).

The TTAB cancelled Coryn's registration because it found that (1) O.C. had standing to pursue cancellation based on its priority of usage of the registered SEACRETS mark, and (2) there was a likelihood of confusion between the marks. *See* ECF No. 1 Attach. 2.[6] To prevail on appeal, Coryn must show that the TTAB's findings about O.C.'s standing—that is, its priority of use--or the likelihood of confusion were unsupported by substantial evidence, or contrary to "new evidence carr[ying] thorough conviction." *Guantanamera*, 729 F. Supp. 2d at 251.

B.   Effect of the Jury Verdict

The Court is bound by the jury's verdict with respect to the common claims in this case under principles similar to those

---

[6] Under 15 U.S.C. § 1064, a party likely to be harmed may petition the TTAB to cancel a mark's registration. The mark may be cancelled if the petitioner proves that (1) "it has standing to petition for cancellation because it is likely to be damaged," and (2) "there are valid grounds for discontinuing registration." *Coach House Rest., Inc. v. Coach & 6 Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991) (citing 15 U.S.C. § 1064). Valid grounds include the mark's likelihood to cause confusion with another mark, which was used in commerce or registered first. 15 U.S.C. 1052(d).

of collateral estoppel or *res judicata*.[7]  See *Med-Therapy Rehab. Servs., Inc. v. Diversicare Corp. of Am.*, 16 F.3d 410 (table), No. 93-1176, 1994 WL 34745 (4th Cir. Feb. 3, 1994).[8]

---

[7] Collateral estoppel bars relitigation of an issue determined in an earlier proceeding when:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue . . . ha[s] been actually determined in the prior proceeding; (3) determination of the issue [was] a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment [is] final and valid; and (5) the party against whom estoppel is asserted . . . had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Svc's Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1993).

[8] The Seventh Circuit would not consider Coryn's appeal as within the collateral estoppel doctrine because the claim is different from the issue at trial, and the judgment is not final. *McKnight v. Gen. Motors Corp.*, 908 F.2d 104, 113 (7th Cir. 1990), *superseded on other grounds as recognized in Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1199 (7th Cir. 1992). Some circuits treat the jury verdict as "final" for estoppel purposes even if it is not final under Fed. R. Civ. P. 54(b). *See, e.g.*, *Troy v. Bay State Computer Grp., Inc.*, 141 F.3d 378, 382-83 (1st Cir. 1998); *Wade v. Orang Cnty. Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988); *Lincoln v. Bd. of Regents of Univ. Sys. of Ga.*, 697 F.2d 928, 934 (11th Cir. 1983); *Lummus Co. v. Commw. Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961). The Fourth Circuit recognized the binding effect of the jury verdict on Coryn's appeal but the Circuit has not indicated whether it would treat this review as a form of collateral estoppel or a distinct rule. *Med-Therapy*, 1994 WL 34745. For its examination of the issues the jury decided, the Court will apply a collateral estoppel-like framework to determine the common issues.

1. Priority of Use

Priority of use in a cancellation proceeding is identical to priority of use in an infringement suit. *Material Supply*, 146 F.3d at 988. The jury had to find that O.C. was the prior user of the mark to find infringement. *See* Jury Instr. No. 14 ("To find liability for trademark infringement, you, the jury, must find . . . O.C. Seacrets established SEACRETS as a trademark before Coryn began to market products in the area where O.C. Seacrets sells its products."). Accordingly, the Court is bound by the jury's finding that O.C. was the prior user of the mark.

2. Likelihood of Confusion

The TTAB analyzed the likelihood of confusion under factors different from those the jury used when deciding O.C.'s counterclaims[9]; on review this Court will use the jury's factors,

---

[9] The TTAB considered:

> (1) the similarity of the marks' appearance, sound, connotation and commercial impression; (2) the similarity and nature of the services; (3) the similarity of the parties' established trade channels and conditions of sale; (4) the relative fame of the marks; and (5) evidence of actual confusion.

ECF No. 1 Attach. 2. The jury considered:

> (1) the strength or distinctiveness of O.C. Seacrets' SEACRETS mark as actually used in the marketplace . . .; (2) the degree of similarity between SEACRETS and SECRETS; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities of O.C.

and determine whether the result comports with the TTAB's conclusion.[10]

The jury had to determine that there was a likelihood of confusion to find infringement. *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Accordingly, because the jury necessarily found a likelihood of confusion of the marks, the Court is bound by that finding.

C. Cancellation

A petitioner seeking cancellation of a mark has standing if it has prior rights in a similar mark. *Coach House Rest., Inc. v. Coach & 6 Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991). Cancellation is proper when the challenged registered mark creates a likelihood of confusion with a prior valid mark. 15 U.S.C. §§ 1064, 1052(d).

---

    Seacrets and Coryn; (5) the similarity of advertising used by O.C. Seacrets and Coryn; (6) Coryn's intent in adopting SECRETS and I will instruct you further about this factor; (7) evidence, if any, of actual confusion; (8) the quality of Coryn's product; and (9) the sophistication of the consuming public.

Jury Instr. No. 17.

[10] *See Coach House Rest.*, 934 F.2d at 1561 ("Although the TTAB need not utilize th[e] multi-factor analysis to be upheld by a district court . . . we do require the district court to analyze the confusion issue via the multifactor analysis to determine if the result comports with that of the TTAB."); *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 623 (6th Cir. 2003) (applying Sixth Circuit likelihood of confusion factors in TTAB appeal).

In finding that Coryn's SECRETS mark infringed O.C.'s SEACRETS mark, the jury found, and the Court is bound to confirm, that there is a likelihood of confusion of the two marks, and O.C. used its mark first. Accordingly, cancellation of the mark was proper.

D.  Coryn's Petitions for Partial Cancellation or Restriction

The TTAB determined that Coryn's proposed modifications to the parties' recitations of goods would not avoid the likelihood of confusion of the marks because O.C. had presented evidence of actual confusion, and the descriptions were "unworkably narrow," and constrained O.C.'s potential for a national market. ECF No. 1 Attach. 2 at 25. Under 15 U.S.C. § 1068, the TTAB may determine whether the marks are likely to be confused based on "the evidence adduced . . . as to the actual goods or services" instead of limiting it to considering confusion based on the recitation of goods or services in the registration application. *Eurostar Inc. v. "Euro-Star" Reitmoden Gmbh & Co. Kg.*, 34 U.S.P.Q.2d 1266, 1995 WL 231387 at *2 (TTAB Dec. 22 1994).

When there is likely--and actual--confusion of the marks, merely modifying the recitation of services will not bar cancellation. *Message in a Bottle, Inc. v. Cangiarella*, Opposition No. 91162780, 2010 WL 2604981 at *12 n.10 (TTAB June

9

15, 2010) (*citing Eurostar*, 34 U.S.P.Q.2d 1266).[11]  The TTAB correctly concluded that the proposed restrictions would not avoid the likelihood of confusion shown by the marks' similarity, evidence of actual confusion, and the anticipated overlapping markets for "restaurant and bar services" and "resort hotel services."[12]

III. Conclusion

For the reasons stated above, the TTAB's decision cancelling Coryn's SECRETS mark will be affirmed.

12/5/11
Date

William D. Quarles, Jr.
United States District Judge

---

[11] Conversely, the *absence* of actual confusion "provide[s] evidence that a narrowing in an identification of goods or services may be appropriate. *Yellow Book USA, Inc. v. Interstate Publishers Corp.*, Cancellation No. 22666, 2003 WL 21796055 at *6 (TTAB Jul. 30, 2003) (restricting recitation of goods when the parties' products were "fundamentally different").

[12] The substantial evidence supporting these findings of fact includes evidence presented at the infringement trial. Tr. 312:12-18 (Zozaya testimony admitting that the marks are identical in sound and similar in appearance); 81:11-16 (Moore testimony of actual confusion and occasional customer belief that O.C. had expanded to resorts); 303:19---304:10 (Zozaya acknowledgement that companies, including Planet Hollywood and Hard Rock, are in the "restaurant/bar" and "hotel service" industries).